# EXHIBIT 5

# OPERATING AGREEMENT
# OF
# MILLENKAMP FAMILY LLC

Dated Effective: December 26, 2012

Prepared by:

## GIVENS PURSLEY LLP

Law Offices
601 W. Bannock Street
PO Box 2720, Boise, Idaho 83701
Telephone: 208 388-1200 • Facsimile: 208 388-1300
Website: www.givenspursley.com

# TABLE OF CONTENTS

**ARTICLE 1. DEFINITIONS**..................................................................................................1
1.1      Definitions.......................................................................................................1

**ARTICLE 2. FORMATION; COMPANY OFFICES; OTHER MATTERS**...........................6
2.1      Name...............................................................................................................6
2.2      Certificate of Organization............................................................................6
2.3      Principal Office of the Company....................................................................6
2.4      Registered Office and Registered Agent........................................................6
2.5      Company Purpose...........................................................................................6
2.6      Adoption of Operating Agreement, Effect of Inconsistencies with Act.........6
2.7      Rights of Creditors and Third Parties............................................................7

**ARTICLE 3. INTEREST HOLDERS; ADDITIONAL MEMBERS AND
AFFILIATE; WITHDRAWAL; EXPULSION** ................................................7
3.1      Names and Addresses of Current Interest Holders.........................................7
3.2      Rights of Interest Holder.................................................................................7
3.3      Additional Members or Affiliate Members .....................................................8
3.4      Withdrawal......................................................................................................8
3.5      Expulsion .......................................................................................................8

**ARTICLE 4. MEMBERS**.......................................................................................................8
4.1      Management; Authority to Act........................................................................8
4.2      Actions Requiring Approval of Members........................................................9
4.3      Actions of Members.......................................................................................11
4.4      Duties of Members........................................................................................12
4.5      Indemnification .............................................................................................12
4.6      Payments of Individual Obligations..............................................................12

**ARTICLE 5. MANAGEMENT OF COMPANY**....................................................................12
5.1      Manager Managed .......................................................................................12
5.2      Manager Powers...........................................................................................12
5.3      Duties and Obligations of Managers.............................................................14
5.4      Number of Managers and Qualifications, Election, Resignation and Removal of
        Managers......................................................................................................15
5.5      Action by Two or More Managers.................................................................16
5.6      Reliance by Other Persons............................................................................16
5.7      Managers' Standard of Care.........................................................................16
5.8      Other Business of Managers.........................................................................17
5.9      Appointment of Officers or Assistant Managers ..........................................17
5.10    Indemnification .............................................................................................17

**ARTICLE 6. CAPITAL CONTRIBUTIONS, CAPITAL ACCOUNTS, LOANS
AND DISTRIBUTIONS** ...............................................................................18
6.1      Capital Contributions....................................................................................18
6.2      Additional Capital Contributions..................................................................18
6.3      Interest and Return of Capital Contribution..................................................18
6.4      Capital Accounts...........................................................................................18

6.5      Loans to the Company ........................................................................................18
6.6      Operating Distributions......................................................................................19
6.7      Allocations .........................................................................................................19

**ARTICLE 7. RECORDS, REPORTS, ETC...........................................................................19**
7.1      Books and Records .............................................................................................19
7.2      Tax Return Information .......................................................................................20
7.3      Financial and Operating Statements ...................................................................20
7.4      Banking...............................................................................................................20

**ARTICLE 8. TRANSFER OF COMPANY INTERESTS.....................................................20**
8.1      Restrictions on Transfer; Effect of Prohibited Transfer ....................................20
8.2      Permitted Transfers.............................................................................................20
8.3      Rights and Obligations Arising Out Of A Permitted Transfer ...........................22
8.4      Conditions to Permitted Transfer........................................................................23
8.5      Prohibited Transfers............................................................................................24
8.6      Rights and Obligations Arising Out of Transfers ..............................................24
8.7      Option to Purchase Affiliate Member's or Disassociated Member's Company
         Interest.................................................................................................................25

**ARTICLE 9. DISASSOCIATION OF A MEMBER...............................................................27**
9.1      Disassociation .....................................................................................................27
9.2      Consequences of Disassociation .........................................................................28
9.3      Rights of Disassociated Member .........................................................................28

**ARTICLE 10. DISSOLUTION AND TERMINATION ........................................................28**
10.1     Dissolution and Events of Dissolution................................................................28
10.2     Winding Up and Liquidation ..............................................................................29
10.3     Liquidating Distributions....................................................................................29
10.4     Distribution in Kind............................................................................................29
10.5     No Recourse Against Interest Holders.................................................................29
10.6     Notice of Dissolution ..........................................................................................29

**ARTICLE 11. CONFLICTS OF INTEREST, COMPETITION  AND
CONFIDENTIAL INFORMATION...............................................................30**
11.1     Self-Interest........................................................................................................30
11.2     Confidential Information .....................................................................................30
11.3     Independent Covenants........................................................................................31

**ARTICLE 12. MISCELLANEOUS PROVISIONS ...............................................................31**
12.1     Attorneys' Fees...................................................................................................31
12.2     Notices ................................................................................................................31
12.3     Application of Idaho Law ....................................................................................31
12.4     Amendments ........................................................................................................31
12.5     Construction.........................................................................................................32
12.6     Headings ..............................................................................................................32
12.7     Waivers ...............................................................................................................32
12.8     Rights and Remedies Cumulative........................................................................32
12.9     Severability .........................................................................................................32
12.10    Heirs, Successors and Assigns.............................................................................32

12.11   Creditors.............................................................................................................32
12.12   Counterparts......................................................................................................32
12.13   Entire Agreement..............................................................................................32

## OPERATING AGREEMENT
## OF
## MILLENKAMP FAMILY LLC

THIS OPERATING AGREEMENT dated effective as of December 26, 2012, ("Operating Agreement") by and among the undersigned parties, who by their execution of this Operating Agreement as Members of Millenkamp Family LLC, an Idaho limited liability company (the "Company"), agree as follows:

## ARTICLE 1.
## DEFINITIONS

1.1    Definitions. The following terms used in this Operating Agreement shall have the following meanings (unless otherwise expressly provided herein):

(a)    "Acquiring Interest Holder" shall mean a Person who acquires a Company Interest from an Assigning Interest Holder or any other Person.

(b)    "Act" shall mean the Idaho Uniform Limited Liability Company Act as set forth in Idaho Code Section 30-6-1; *et. seq.*, as amended from time to time.

(c)    "Affiliate Member" shall mean (i) an Acquiring Interest Holder who received a Company Interest pursuant to a Permitted Affiliate Member Transfer under Section 8.2(b) and has not been admitted as a Member pursuant to Section 3.3, and (ii) a Disassociated Member or any other Person who is admitted as an Affiliate Member under Section 3.3.

(d)    "Appointed Representative" shall mean the duly appointed personal representative, guardian, conservator, attorney-in-fact, trustee, manager, officer or other legal representative vested with the power to act on behalf of a Member, Affiliate Member, Deceased Interest Holder or Disabled Interest Holder, or administer such Person's estate.

(e)    "Assigning Interest Holder" shall mean any Interest Holder who Transfers a Company Interest.

(f)    "Bankruptcy" shall mean: (i) the inability of a Person to pay his debts generally as they become due, (ii) any assignment by a Person for the benefit of his creditors, (iii) the filing by a Person of a voluntary petition in bankruptcy or similar insolvency proceedings, or (iv) the filing against a Person of an involuntary petition in bankruptcy or similar insolvency proceeding that is not dismissed within ninety (90) days thereafter.

(g)    "Book Value" shall have the meaning ascribed to such term as in Section 1.1(c) of Exhibit B.

(h)    "Built-In-Gain Allocation" shall have the meaning ascribed to such term in Section 1.1(d) of Exhibit B.

(i)     "Business Day" shall mean any day other than Saturday, Sunday, or any legal holiday observed in Idaho.

(j)     "Capital Account" shall mean as of any given date the amount calculated and maintained by the Company for each Interest Holder as provided in Section 6.4 and Section 2.1 of Exhibit B.

(k)     "Capital Contribution" shall mean any contribution to the capital of the Company by an Interest Holder, in cash, property, or services.

(l)     "Certificate" shall mean the Certificate of Organization of the Company as filed with the Secretary of State of Idaho effective as of December 26, 2012 as the same may be amended or restated from time to time.

(m)    "Code" shall mean the Internal Revenue Code of 1986 or corresponding provisions of subsequent superseding federal tax laws.

(n)     "Company" shall refer to Millenkamp Family LLC, an Idaho limited liability company.

(o)     "Company Interest" shall mean each Interest Holder's ownership interest in the Company, and includes each Interest Holder's "limited liability company interest" or "interest in the limited liability company" under the Act and any rights and benefits to which the owner of such ownership interest may be entitled as provided in this Operating Agreement, together with the obligation of such Person to be subject to, and comply with, the terms and conditions of this Operating Agreement.

(p)     "Confidential Information" means information or material proprietary to the Company or proprietary to others and entrusted to the Company, whether written or oral, tangible or intangible, which an Interest Holder obtains knowledge of through or as a result of the Interest Holder's relationship with the Company. In addition to the foregoing, Confidential Information shall include, without limitation, all Tax Information, Financial Information, as well as data, know-how, trade secrets, designs, plans, drawings, specifications, reports, customer and supplier lists, pricing information, marketing techniques and materials, and manufacturing techniques and processes, whether related to the Company's past, present, or future business activities, research, development, or products.

(q)     "Curative Allocations" shall have the meaning ascribed to such term in Section 1.1(f) of Exhibit B.

(r)     "Deceased Interest Holder" shall mean a Member or Affiliate Member, who dies. The term "Deceased Interest Holder" shall also include a deceased Assigning Interest Holder who transferred a Company Interest pursuant to a Permitted Member Transfer under Section 8.2(a)(i) or 8.2(a)(ii) or a deceased Disabled Interest Holder who Transferred a Company Interest pursuant to a Permitted Affiliate Member Transfer under Section 8.2(b)(v); provided, that the Acquiring Interest Holder is still a Member or Affiliate Member when such Assigning Interest Holder or Disabled Interest Holder dies.

(s)  "Disabled Interest Holder" shall mean a Member or Affiliate Member who is Legally Disabled. The term "Disabled Interest Holder" shall also include a Legally Disabled Assigning Interest Holder who transferred a Company Interest pursuant to a Permitted Member Transfer under Section 8.2(a)(i) or 8.2(a)(ii), provided that the Acquiring Interest Holder is a Member when such Assigning Interest Holder becomes Legally Disabled.

(t)  "Disassociated Member" shall mean: (i) any Member or Affiliate Member to whom a Disassociation Event applies as set forth in Section 9.2, and (ii) any Acquiring Interest Holder that acquires a Company Interest from such Person other than a Member that acquires such Company Interest through a Permitted Transfer.

(u)  "Disassociation Event" shall mean the events identified in Section 9.1.

(v)  "Dissolution Event" shall mean the events identified in Section 10.1.

(w)  "Economic Rights" shall mean an Interest Holder's allocable share of the Profits and Losses under Section 6.7, Tax Distributions and Operating Distributions under Section 6.6, Liquidating Distributions, under Section 10.3, and the limited right to receive Tax Return Information pursuant to Section 7.2 but shall not include any Voting Rights or Information Rights.

(x)  "Entity" shall mean any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative, or other association.

(y)  "Financial Information" shall mean all books and records maintained by the Company pursuant to Section 7.1.

(z)  "Former Initial Manager" shall have the meaning ascribed to such term in Section 5.4(c).

(aa)  "Founding Member" shall mean William J. Millenkamp and/or Susan J. Millenkamp.

(bb)  "Information Rights" shall mean the right of a Member or Affiliate to obtain information with respect to the Company hereunder, including without limitation the right to review and inspect Financial Information and the right to receive financial and operating statements pursuant to Section 7.3. Information Rights do not include Voting Rights. Only Members and Affiliate Members have Information Rights.

(cc)  "Initial Managers" shall mean William J. Millenkamp and/or Susan J. Millenkamp as set forth in Section 5.4(c).

(dd)  "Interest Holder" shall mean any Member, Affiliate Member or Disassociated Member who owns a Company Interest.

(ee)  "Issue" shall mean all persons who are descended from the natural Person referred to for purposes of intestate succession as determined under the laws of Idaho. For the

purposes of the foregoing, an adopted person shall be considered as descended from the person referred; provided, that such person was adopted while under the age of eighteen (18) years.

(ff)    "Legally Disabled" shall mean the adjudication and entry of an order of a court of competent jurisdiction that a natural Person is incompetent to manage their person or estate.

(gg)    "Liquidating Distributions" shall have the meaning ascribed to such term in Section 10.3(b).

(hh)    "Losses" shall have the meaning ascribed to such term in the definition of "Profits and Losses" set forth in Section 1.1(l) of Exhibit B.

(ii)    "Majority of Members" shall mean greater than fifty percent (50%) of the Percentage Interests of the Members.

(jj)    "Manager" shall mean a person appointed to manage the business and affairs of the Company pursuant to Article 5.

(kk)    "Member" shall mean each Person that is identified as a current Member in Section 3.1 hereof, or is admitted as a Member as provided in Section 3.3(a) or 8.3 hereof. A Person shall cease to be a Member at such time as he becomes a Disassociated Member or no longer owns a Company Interest.

(ll)    "Millenkamp Heir" shall mean an Issue of either Founding Member.

(mm)    "Operating Agreement" shall mean only this Operating Agreement, as originally executed and as amended from time to time pursuant to Section 12.4 herein.

(nn)    "Operating Distributions" shall have the meaning ascribed to such term in Section 6.6.

(oo)    "Option Notice" shall have the meaning ascribed to such term in Section 8.7(b).

(pp)    "Option to Purchase" shall have the meaning ascribed to such term in Section 8.7.

(qq)    "Option Term" shall have the meaning ascribed to such term in Section 8.7(a).

(rr)    "Percentage Interest" shall mean: (i) for purposes of Economic Rights under this Operating Agreement, for each Interest Holder, the Capital Account of such Person, as applicable, divided by the total Capital Accounts of all Interest Holders, and (ii) for purposes of Voting Rights of the Members, for each Member the Capital Account of such Member, divided by the total Capital Accounts of all Members. The Percentage Interests of each Member as of the Effective Date are set forth in Exhibit A-1 hereto.

(ss)    "Permitted Affiliate Member Transfer" shall mean a Transfer set forth in Section 8.2(b).

(tt)    "Permitted Member Transfer" shall mean a Transfer set forth in Section 8.2(a).

(uu)    "Permitted Transfer" shall mean a Permitted Member Transfer or a Permitted Affiliate Member Transfer.

(vv)    "Person" shall mean any natural person or Entity, and the heirs, executors, administrators, legal representatives, successors, and assigns of such Person where the context so admits.

(ww)    "Profits" shall have the meaning ascribed to such term in the definition of "Profits and Losses" set forth in Section 1.1(l) of Exhibit B.

(xx)    "Regulations" shall mean the permanent, temporary or proposed regulations of the United States Department of the Treasury under the Code.

(yy)    "Special Allocations" shall have the meaning ascribed to such term in Section 3.1 of Exhibit B.

(zz)    "Successor Manager" shall mean any person appointed to act as a Manager after the date hereof.

(aaa)    "Super Majority of Members" shall mean greater than sixty-six percent (66%) of the Percentage Interests of the Members.

(bbb)    "Tax Distributions" shall have the meaning ascribed to such term in Section 6.6(b).

(ccc)    "Tax Return Information" shall mean the information required to be prepared and distributed to the Interest Holders pursuant to Section 7.2.

(ddd)    "Transfer" shall mean any sale, pledging, encumbering, giving, bequeathing, or other transferring or disposing of, or permitting to be sold, encumbered, attached, or otherwise disposed of or have ownership changed in any manner, whether voluntarily, involuntarily, by operation of law, upon or as a result of death, or incident to divorce. Notwithstanding the above, the term Transfer shall not include a pledge or encumbrance of a Member's Company Interest as security for the payment of a debt provided that: (i) the pledgee or the Secured Party agrees to be bound by all of the terms and conditions of this Operating Agreement, and (ii) such pledge or encumbrance is approved by a Super Majority of Members.

(eee)    "Unanimity of Members" shall mean one hundred percent (100%) of the Percentage Interests of the Members.

(fff) "Voting Rights" shall mean the right of a Member to consent or approve actions of the Company and the right to attend meetings of the Members. Only Members have Voting Rights.

(ggg) "Wholly Owned Entity" means an Entity of which one hundred percent (100%) of the voting stock or beneficial ownership is owned directly or individually by one Person.

## ARTICLE 2.
## FORMATION; COMPANY OFFICES; OTHER MATTERS

2.1     Name. The name of the limited liability company is Millenkamp Family LLC.

2.2     Certificate of Organization. The Certificate was filed with the Idaho Secretary of State on the 26th day of December, 2012 by Clint R. Bolinder as the organizer at the direction of the Founding Members. The Certificate may be amended from time to time upon the approval of a Super Majority of Members.

2.3     Principal Office of the Company. The principal office of the Company shall initially be located at 471 North 300 West Jerome, Idaho 83338. The Managers may relocate the principal office or establish additional offices from time to time as appropriate.

2.4     Registered Office and Registered Agent. The Company's registered office shall be at 601 W. Bannock, Boise, Idaho 83702, and the name of its registered agent at such address shall be Givens Pursley Corporate Services LLC. The Managers may change the registered office and registered agent from time to time in its discretion.

2.5     Company Purpose. The purpose of the Company shall be to engage in any lawful business permitted by the Act or the laws of the State of Idaho.

2.6     Adoption of Operating Agreement, Effect of Inconsistencies with Act. Interest Holders shall be subject to the terms and conditions of this Operating Agreement. Notwithstanding any other agreement between the Interest Holders with respect to the Company, whether in writing, oral, in a record, implied, or any combination thereof, the Interest Holders agree that this Operating Agreement shall be the sole source of agreement between and among the Company and the Interest Holders with respect to all matters relating to the Company. Except to the extent a provision of this Operating Agreement expressly incorporates federal income tax rules by reference to the Code or Regulations, this Operating Agreement shall govern all matters between the Company and the Interest Holders (in the capacity as such) relating to the Company notwithstanding any provision of the Act or any other law or rule to the contrary. To the extent any provision of this Operating Agreement is prohibited or ineffective under the Act, this Operating Agreement shall be considered amended to the smallest degree possible in order to make this Operating Agreement effective under the Act. In the event the Act is subsequently amended or interpreted in such a way to make any provision of this Operating Agreement that was formerly invalid valid, such provision shall be considered to be valid from the effective date of such amendment or interpretation. The Interest Holders agree that each Interest Holder shall be entitled to rely on the provisions of this Operating Agreement, and no Interest Holder shall be liable to the Company or to any other Interest Holder for any action, or refusal to act, taken in

good faith reliance on the terms of this Operating Agreement. Furthermore, the Interest Holders agree and acknowledge that any provisions of this Operating Agreement that are inconsistent with the Act are not manifestly unreasonable as that term is defined under the Act or any Idaho law interpreting the same.

2.7 Rights of Creditors and Third Parties. This Operating Agreement is entered into for the exclusive benefit of the Interest Holders. This Operating Agreement is expressly not intended for the benefit of any creditor of the Company or any other Person who is not an Interest Holder. No such creditor or Person shall have any rights under this Operating Agreement or any agreement between the Company and any Interest Holder with respect to any rights related to this Operating Agreement.

## ARTICLE 3.
## INTEREST HOLDERS; ADDITIONAL MEMBERS AND AFFILIATE; WITHDRAWAL; EXPULSION

3.1 Names and Addresses of Current Interest Holders.

(a) Members. The names and addresses of the current Members as of the date hereof are set forth in Exhibit A-1. Upon the admittance of an additional Member or if any Person ceases to be a Member, the Managers shall amend and/or restate Exhibit A-1 accordingly.

(b) Affiliate Members. The names and addresses of Affiliate Members shall be set forth on Exhibit A-2. As of the date hereof there are no Affiliate Members. In the event an Interest Holder, or any other Person, becomes and Affiliate Member and upon any subsequent admission of an additional Affiliate Member or an Interest Holder ceases to be an Affiliate Member, the Managers shall amend and/or restate Exhibit A-2 accordingly.

(c) Disassociated Members. The names and addresses of Disassociated Members shall be set forth on Exhibit A-3. As of the date hereof there are no Disassociated Members. In the event an Interest Holder, or any other Person, becomes a Disassociated Member or an Interest Holder ceases to be a Disassociated Member, the Managers shall amend and/or restate Exhibit A-3 accordingly.

3.2 Rights of Interest Holder.

(a) Rights of Members. A Member's Company Interest and the rights related thereto shall include Economic Rights, Information Rights and Voting Rights.

(b) Rights of Affiliate Members. An Affiliate Member's Company Interest and the rights related thereto shall include Economic Rights and Information Rights. An Affiliate Member shall not have any Voting Rights.

(c) Rights of Disassociated Members. A Disassociated Member's Company Interest and the rights related thereto shall be limited solely to Economic Rights. A Disassociated Member shall not have any Information Rights or Voting Rights.

3.3     Additional Members or Affiliate Members.

        (a)     Members.    Except for a Millenkamp Heir and except as provided in
Section 8.3(a) with respect to a Permitted Member Transfer and Section 8.3(d) in the event an
Option to Purchase the Company Interests held by certain Affiliate Members is not exercised
during the Option Term, Acquiring Interest Holders, Affiliate Members, Disassociated Members
and other Persons may only be admitted as Members with the consent and upon the terms and
conditions approved by a Unanimity of Members.    A Millenkamp Heir (other than a
Disassociated Member) may be admitted as a Member with the consent and upon the terms and
conditions approved by a Super Majority of Members. In addition, prior to admission as a
Member, such Person shall be required to satisfy the relevant conditions to Permitted Transfers
set forth in Section 8.4 of this Operating Agreement and any other terms and conditions
approved by a Unanimity of Members.

        (b)     Affiliate Members.   Except as provided in Section 8.3(d) with respect to a
Permitted Affiliate Member Transfer, Acquiring Interest Holders and other Persons (other than
Disassociated Members) may only be admitted as an Affiliate Member with the consent and
upon the terms and conditions approved by a Super Majority of Members.   Disassociated
Members may only be admitted as an Affiliate Member with the consent and upon the terms and
conditions approved by a Unanimity of Members. In addition, prior to admission as an Affiliate
Member, such Person shall be required to satisfy the relevant conditions to Permitted Transfers
set forth in Section 8.4 of this Operating Agreement and any other terms and conditions
approved by a Unanimity of Members.

3.4     Withdrawal.   No Interest Holder may voluntarily withdraw from the Company or
otherwise forfeit its Company Interests without the consent of a Super Majority of Members. A
voluntary withdrawal in violation of this Section constitutes a breach of this Operating
Agreement for which the Company and the other Members shall have the remedies provided
under this Operating Agreement and applicable law.

3.5     Expulsion.   A Member or Affiliate Member may be expelled from the Company
upon the written determination of a Super Majority of Members so long as such Super Majority
of Members constitutes at least two (2) Members regardless of each such Members' individual
Percentage Interest, that the Member or Affiliate Member has been guilty of wrongful conduct
that adversely and materially affects the business or affairs of the Company, or has willfully and
persistently committed a material breach of the Certificate or this Operating Agreement, or
otherwise breached a duty owed to the Company or the other Members, and that it is not
reasonably practical to carry on the business or affairs of the Company with the Member or
Affiliate Member. An expelled Member or Affiliate Member shall become a Disassociated
Member as of the date of the written expulsion determination.

## ARTICLE 4.
## MEMBERS

4.1     Management; Authority to Act.   The Members shall not be entitled to participate
in the day-to-day affairs and management of the Company, but instead, the Members' right to
exercise Voting Rights, or otherwise participate with respect to matters relating to the Company,

shall be limited to those matters for which the express terms of this Operating Agreement vest in the Members the right to so vote or otherwise participate. No Member shall have the power or authority to bind the Company unless the Member has been authorized by the Managers in accordance with Section 5.9.

    4.2    Actions Requiring Approval of Members.

        (a)    Approval of Majority of Members. Notwithstanding any other provision of this Operating Agreement, the approval of a Majority of Members shall be required in order for any of the following actions to be taken by or on behalf of the Company:

            (i)    Appointing or removing a Successor Manager as set forth Section 5.4(f).

            (ii)    Establishing and revising the salary or other compensation of any Manager or any officers and assistant managers appointed by the Managers under Section 5.9.

            (iii)    Approving any additional Capital Contributions under Section 6.2.

            (iv)    Determining whether the Company will exercise an Option to Purchase pursuant to Section 8.7.

        (b)    Approval of Super Majority of Members. Notwithstanding any other provision of this Operating Agreement, the approval of a Super Majority of Members shall be required in order for any of the following actions to be taken by or on behalf of the Company:

            (i)    Approving any transaction involving an actual or known potential conflict of interest between a Member or a Manager and the Company.

            (ii)    Amending and/or restating this Operating Agreement, except for any provision where approval of a Unanimity of Members is required or the amendment and/or restating of Articles 6 and 10 and Exhibit B. Notwithstanding the foregoing, the Managers shall have the power to amend and/or restate Exhibits A-1, A-2 and A-3 as provided in Section 3.1.

            (iii)    Ratifying the election of a Manager that is not a Member as set forth in Section 5.4(b).

            (iv)    Selling, leasing, exchanging, mortgaging, pledging, or otherwise transferring or disposing of all or substantially all of the assets of the Company, including, without limitation, a sale or disposition by merger, conversion, consolidation, or reorganization with or into another Entity.

            (v)    Effecting a merger or reorganization of the Company with or into any other Entity.

            (vi)    Amending the Certificate.

(vii)    Confessing a judgment against the Company.

(viii)    Filing or consenting to the filing of Bankruptcy.

(ix)    Consenting to the withdrawal of an Interest Holder as set forth in Section 3.4.

(x)    Expelling a Member or Affiliate Member under Section 3.5.

(xi)    Approving the pledge or encumbrance of a Member's Company Interest as provided in Section 1.1(ddd).

(xii)    Removing an Initial Manager as set forth in Section 5.4(f).

(xiii)    Determining the number of Managers as set forth under Section 5.4(a).

(xiv)    Satisfaction of an Interest Holder's individual obligations with Company assets as set forth under Section 4.6.

(xv)    Dissolving the Company pursuant to Section 10.1(a).

(xvi)    Approval of the admission of an Affiliate Member that is a Millenkamp Heir or any other Person that is a Millenkamp Heir as a Member of the Company as set forth in Section 3.3(a).

(xvii)    Approval of the admission of any Person as an Affiliate Member that is not a Millenkamp Heir as set forth in Section 3.3(b).

(xviii)    Approval of a Transfer as a Permitted Affiliate Member Transfer pursuant to Section 8.2(b)(iii) that would not otherwise qualify as a Permitted Affiliate Member Transfer without such approval.

(c)    Unanimous Approval of Members.  Notwithstanding any other provision of this Operating Agreement, approval by a Unanimity of Members shall be required in order for any of the following actions to be taken by or on behalf of the Company:

(i)    Amending and/or restating any provision of this Operating Agreement requiring approval by a Unanimity of Members, and amending and/or restating Articles 6 and 10 and Exhibit B.

(ii)    Approval of the admission of any Person that is not a Millenkamp Heir as a Member of the Company as set forth in Section 3.3(b).

(iii)    Doing any act in contravention of this Operating Agreement.

(d)    Unless the express terms of this Operating Agreement specifically provide otherwise, the affirmative vote or approval of a Majority of Members shall be necessary and

sufficient to approve or consent to any of the matters that require the approval or consent of the Members.

4.3     Actions of Members.

    (a)     Member Meetings.

        (i)     The Members shall hold an annual meeting on a date and at a time established by the Managers of which the Members shall be notified pursuant to the notification requirements set forth in Section 4.3(a)(ii).

        (ii)     The Managers or any Member with a Percentage Interest greater than ten percent (10%) may call a special meeting of the members to consider approval of an action or decision under any provision of this Operating Agreement by delivering to each Member written notice of the time and purpose of such meeting not less than ten (10) nor more than sixty (60) days before the date of such meeting. A Member may waive the requirement of notice of a meeting either by attending such meeting or executing a written waiver before or after such meeting. Any such meeting shall be held during the Company's normal business hours at its principal place of business unless all of the other Members consent in writing or by their attendance at such meeting to its being held at another location or time.

        (iii)     Only Members have the right to attend Member meetings. Affiliate Members and Disassociated Members do not have the right to participate in or attend Member meetings and are not entitled to notice of such meetings.

    (b)     Participation by Telephone or Similar Communications. Members may participate and hold a meeting by means of telephone conference or similar communications equipment by means of which all Members participating can hear and be heard, and such participation shall constitute attendance and presence in person at such meeting.

    (c)     Waiver of Notice; Meeting of All Members. When any notice of a meeting of the Members is required to be given, a waiver thereof in writing signed by a Member entitled to such notice, whether given before, at, or after the time of the meeting as stated in such notice, shall be equivalent to the proper giving of such notice. If all of the Members shall meet at any time and place, and consent to the holding of a meeting at such time and place, such meeting shall be valid without call or notice, and at such meeting lawful action may be taken.

    (d)     Proxies. At all meetings of the Members a Member may vote in person or by a proxy executed in writing by the Member or by a duly authorized attorney-in-fact. Such proxy shall be filed with the Managers before or at the time of the meeting and may be of any duration, except that a Member who shall appear in person at a meeting shall void any outstanding proxy for so long as such Member is in attendance.

    (e)     Action by Written Consent. Any action required to be approved by the Members may be approved without a meeting if one or more written consents to such action are signed by a Unanimity of Members. Such consent or consents shall be filed with the minutes of the meetings of the Members. Action taken under this Section shall be effective when a

Unanimity of Members have signed the consent or consents, unless the consent or consents specify a different effective date.

(f)    Books, Records, Reports and Information. Each Member shall have the right to receive the reports and information required to be provided by this Operating Agreement. Upon reasonable request, each Member, and the Member's agent and attorney, shall have the right, during ordinary business hours, to inspect and copy, at the requesting Member's expense, the books and records which the Managers are required, by the Act and this Operating Agreement, to keep.

4.4    Duties of Members. Pursuant to Section 30-6-409(7)(e) of the Act, the Members do not have any fiduciary duties to the Company or to each other solely by reason of being a Member, except that each Member shall be required to notify the Managers and all other Members if the Company is involved in a transaction in which such Member has an actual or potential conflict of interest.

4.5    Indemnification. The Company shall indemnify each Member for all costs, losses, liabilities, and damages paid or accrued by such Member, and business expenses incurred by the Member with the approval of the Managers, in connection with the business of the Company, except that this provision shall not eliminate or limit a Member's liability for:

(a)    Acts or omissions not in good faith which involve intentional misconduct or a knowing violation of law;

(b)    Any act that violates the terms of this Operating Agreement; or

(c)    Any action taken by a Member on behalf of the Company without authority.

4.6    Payments of Individual Obligations. The Company's credit and assets shall be used solely for the benefit of the Company, and no asset of the Company shall be Transferred for or in payment of any individual obligation of any Interest Holder unless approved by a Super Majority of Members.

## ARTICLE 5.
## MANAGEMENT OF COMPANY

5.1    Manager Managed. Except as expressly provided otherwise in this Operating Agreement, the powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed by one or more Managers designated by the Members as provided in Section 5.4. If at any time there is only one Manager, such Manager shall be entitled to exercise all powers of the Managers set forth in this Article 5 and all references to "Managers" in this Operating Agreement shall be deemed to refer to such single Manager.

5.2    Manager Powers. Except as expressly provided otherwise in this Operating Agreement, the Managers shall have the sole and exclusive right to manage the business of the

Company, and shall have all of the rights and powers which may be possessed by a manager under the Act. The powers so exercised shall include but not be limited to the following:

(a) Entering into, making, and performing contracts, agreements and other undertakings binding the Company that may be necessary, appropriate, or advisable in furtherance of the purposes of the Company.

(b) Opening and maintaining bank accounts, investment accounts, and other arrangements, drawing checks and other orders for the payment of money, and designating individuals with authority to sign or give instructions with respect to those accounts and arrangements.

(c) Collecting funds owed to the Company.

(d) To the extent that funds of the Company are available, paying debts and obligations of the Company.

(e) Borrowing money or otherwise committing the credit of the Company for Company activities, and voluntarily prepaying or extending any such borrowings.

(f) Employing from time to time persons, firms or corporations for the operation and management of various aspects of the Company's business, including, without limitation, managing agents, contractors, subcontractors, architects, engineers, laborers, suppliers, accountants, and attorneys on such terms and for such compensation as the Managers shall determine, notwithstanding the fact that the Managers or any Member may have a financial interest in such firms or corporations.

(g) Making elections available to the Company under the Code.

(h) Obtaining general liability, property, and other insurance for the Company, as the Managers deem proper.

(i) Taking such actions as may be directed by the Members in furtherance of their approval of any matter set forth in Section 4.2 hereof.

(j) Instituting, prosecuting, and defending actions in all courts in the Company's name.

(k) Purchasing taking, receiving, leasing, or otherwise acquiring, owning, holding, improving, using, and otherwise dealing in or with, real or personal property or any interest in real or personal property, wherever situated.

(l) Selling, conveying, mortgaging, pledging, creating a security interest in, leasing, exchanging, transferring, and otherwise disposing of less than all or substantially all of the assets of the Company.

(m) Purchasing, taking, receiving, subscribing for or otherwise acquiring, owning, holding, voting, using, employing, selling, mortgaging, lending, pledging, otherwise

disposing of, and otherwise using or dealing in or with other interests in or obligations of any other Entity.

(n)     Entering into contracts or guarantees, incurring liabilities, or issuing Company notes.

(o)     Investing or reinvesting Company funds or receiving and holding real or personal property as security for repayment of funds so loaned, invested or reinvested, including, without limitation, loans to any Manager, Members, employees and agents.

(p)     Being a promoter, incorporator, general partner, limited partner, member, associate, or manager of any partnership, joint venture, trust, or other Entity.

(q)     Conducting the Company's business, locating its offices and exercising the powers granted by the Act and the Certificate within or without the State of Idaho.

(r)     Establishing pension plans, profit sharing plans, and other benefit or incentive plans for any and all of the Company's current or former Managers, Members, employees and agents.

(s)     Indemnifying a Member or any other person as and to the extent not inconsistent with the provisions of the Act, the Certificate, or this Operating Agreement.

(t)     Doing and performing all such things and executing, acknowledging, and delivering any and all such instruments as may be in furtherance of the Company's purposes and necessary and appropriate to the conduct of its business.

(u)     Exercising any other power or undertaken any action that the Managers are authorized to exercise or undertaken under this Operating Agreement.

5.3     Duties and Obligations of Managers.  In addition to any other duties and obligations the Managers may have, the Managers shall also be responsible for the following:

(a)     The Managers shall cause the Company to conduct its business and operations separate and apart from that of the Managers by:

(i)     Segregating assets of the Company and not allowing assets of the Company to be commingled with the funds or other assets of, held by, or registered in the name of any Manager or any Person other than the Company;

(ii)     Maintaining books and financial records of the Company separate from the books and financial records of the Managers or any Person other than the Company, and observing all Company procedures and formalities, including, without limitation, maintaining minutes of Company meetings;

(iii)     Causing the Company to pay its liabilities from the assets of the Company; and

(iv)  Causing the Company to conduct its dealings with any Person in its own name and as a separate and independent entity.

(b)  The Managers shall take all actions which may be necessary or appropriate to:

(i)  Continue the Company's valid existence as a limited liability company under the laws of Idaho and of each other jurisdiction in which such existence is necessary to protect the limited liability of the Members or to enable the Company to conduct the business in which it is engaged; and

(ii)  Accomplish the Company's purposes, including the acquisition, development, maintenance, preservation, and operation of assets of the Company in accordance with the provisions of this Operating Agreement and applicable laws and regulations.

5.4  Number of Managers and Qualifications, Election, Resignation and Removal of Managers.

(a)  Number of Managers. The number of Managers shall be determined and may be changed from time to time upon approval of a Super Majority of Members; provided, however, there shall always be at least one (1) Manager. Notwithstanding anything in this Operating Agreement to the contrary, no decrease in the number of Managers shall shorten the term of any incumbent Manager.

(b)  Qualification. A Manager is not required to be a Member of the Company; notwithstanding, the election of a Manager who is not a Member must be ratified by a Super Majority of Members; provided, however, the Appointed Representative of a Member whose Percentage Interest is ten percent (10%) or more shall be considered a Member solely for purposes of qualifying to serve as a Manager and no such ratification is required. Notwithstanding anything herein to the contrary, a Disassociated Member or its Appointed Representative may not serve as a Manager.

(c)  Initial Manager. Until such time as the Members increase the number of Managers pursuant to Section 5.4(a) above, there shall be two (2) Managers and the Members hereby appoint William J. Millenkamp and Susan J. Millenkamp as such Managers ("Initial Managers"). In the event one (1) of the Initial Managers ("Former Initial Manager") resigns or is removed, unless the Members have increased the number of Managers pursuant to Section 5.4(a), the other Initial Managers shall serve as the sole Manager; or, if the Members have increased the number of Managers pursuant to Section 5.4(a), the remaining Initial Manager shall serve with such other Managers, however, the Former Initial Manager shall not be replaced with a Successor Manager unless such Former Initial Manager was the sole Manager or an increase in the number of Managers is otherwise approved by a Super Majority of Members.

(d)  Election of Successor Managers. Any Successor Manager shall be elected by a Majority of Members.

(e)     Term.   The Initial Manager shall serve until he or she resigns or is removed.  Successor Managers shall be elected to hold office for a term of two (2) years.  Each Manager shall continue to serve, despite the expiration of his or her term, until a successor is duly elected and qualified, or until there is a decrease in the number of Managers, or until his or her earlier death, resignation or removal.

(f)     Removal.  If a Manager is no longer qualified under Section 5.4(b) above, such Manager shall be automatically removed upon the date of disqualification.  In all other cases, a Manager may be removed, with or without cause, by the vote of a Majority of Members.  Notwithstanding the foregoing, the Initial Manager may only be removed upon the determination of a Super Majority of Members that such Manager has been guilty of wrongful conduct that adversely and materially affects his or her ability to serve as a Manager or has willfully and persistently failed to carryout and observe the duties of a Manager.

(g)     The salary or other compensation of any Manager and any officers or assistant managers appointed by the Manager pursuant to Section 5.9 shall be established and set by a Majority of Members.

5.5     Action by Two or More Managers.  If the Members have appointed more than one Manager, unless otherwise expressly provided by the terms of this Operating Agreement, the vote, approval or consent of a majority of the Managers shall be necessary for the Managers to take any action on behalf of the Company that the Managers are authorized to take pursuant to the Act, the Certificate or this Operating Agreement, including, without limitation, the authority to execute any documents or take any other actions deemed necessary or desirable in furtherance of any action that they are authorized to take on behalf of the Company.  Notwithstanding the foregoing, the Managers may delegate in writing to one or more of their number the authority to unilaterally take any such action on behalf of the Company.

5.6     Reliance by Other Persons.  Any Person dealing with the Company may, to the extent otherwise consistent with the terms of this Operating Agreement, rely (without duty of further inquiry) upon a certificate signed by a duly appointed Manager as to:

(a)     The identity of any Interest Holders;

(b)     The existence or nonexistence of any fact or facts which constitute a condition precedent to acts by the Managers or which are in any other manner germane to the affairs of the Company;

(c)     The Persons who are authorized to execute and deliver any instrument or document of the Company; and/or

(d)     Any act or failure to act by the Company or any other matter whatsoever involving the Company or any Interest Holder.

5.7     Managers' Standard of Care.  Subject to the business judgment rule, all Managers shall discharge its duties set forth herein in good faith and shall act with the care that a Person in a like position would reasonably exercise under similar circumstances and in a manner such Person reasonably believes to be in the best interests of the Company.  In discharging this duty, a

Manager may rely in good faith upon opinions, reports, statements, or other information provided by another Person that they reasonably believe is a competent and reliable source for the information. Notwithstanding anything in this Section 5.7 or any other section of this Operating Agreement to the contrary, if a Manager is also a Member, the duties and standard of care imposed upon the Managers under this Operating Agreement or the Act shall not apply to such Member in its capacity as a Member solely because such Member is also a Manager.

5.8     Other Business of Managers. Managers shall not be required to manage the Company as their sole and exclusive function. Such Person may have other business interests and may engage in other activities in addition to those relating to the Company, even if such other activities are competitive with any activity or business conducted by the Company. As permitted by Section 30-6-110(4) of the Act, the Members hereby eliminate the duties set forth in Sections 30-6-409(2)(a)(iii), (b) and (c) of the Act that would be otherwise imposed upon the Managers pursuant to Section 30-6-409(7) of the Act, and the Members hereby agree that the elimination of such duties is not manifestly unreasonable as that term is defined under the Act or any Idaho law interpreting the same.

5.9     Appointment of Officers or Assistant Managers. The Managers may appoint such officers or assistant Managers as they deem necessary or desirable and may delegate some or all of their duties and/or responsibilities hereunder to such Persons that the Managers reasonably believe competent to perform such duties and/or responsibilities. Notwithstanding the above or any other provision of this Operating Agreement, the following actions cannot be so delegated:

(a)     Determining the amount of cash and/or kind of property available for, and the timing of Operating Distributions under Section 6.6.

(b)     Loaning Company funds.

(c)     Obtaining loans from Members pursuant to Section 6.5.

(d)     Any decisions or powers vested in the Managers under Exhibit B of this Operating Agreement.

(e)     Indemnifying a Member or Manager or any other Person as and to the extent not inconsistent with the provisions of the Act, the Certificate, or this Operating Agreement.

5.10     Indemnification. Subject to substantial compliance with the standard of care set forth in Section 5.7, the Company shall indemnify each Manager, to the full extent permitted by the Act, except that this provision shall not eliminate or limit a Manager's liability for:

(a)     Acts or omissions not in good faith which involve intentional misconduct or a knowing violation of law;

(b)     Any act that violate the terms of this Operating Agreement; or

(c)     Any action taken by a Manager on behalf of the Company without authority.

## ARTICLE 6.
## CAPITAL CONTRIBUTIONS, CAPITAL ACCOUNTS,
## LOANS AND DISTRIBUTIONS

6.1    Capital Contributions. Pursuant to that certain Capital Contribution Agreement executed of even date herewith, to be effective on December 31, 2012, by and between the Interest Holders (as of the date hereof) and the Company, the Interest Holders shall make Capital Contributions to the Company as set forth therein.

6.2    Additional Capital Contributions. The Interest Holders may make additional Capital Contributions to the Company only if a Majority of Members determines that such are necessary or desired to the continued operation and/or expansion of the Company. Any such additional Capital Contribution shall be made in cash or other readily available funds unless the Managers agree to accept property other than cash. If any such additional Capital Contribution is property other than cash, the amount of the Capital Contribution shall be the fair market value of such property as determined by the Managers pursuant to Section 3 of Exhibit B. Upon the approval of additional Capital Contributions by a Majority of Members, the Company shall give written notice to all Interest Holders at least five (5) Business Days prior to the date on which such Capital Contribution is due. The notice shall set forth the amount of Capital Contribution needed, the purpose of the Capital Contribution, and the date by which the Interest Holders should contribute. Each Interest Holder is entitled to contribute a proportionate share of such Capital Contribution in accordance with such Interest Holder's Percentage Interest. No Interest Holder is obligated to make any additional Capital Contributions. In the event any one or more Interest Holders do not make an additional Capital Contribution, the other Interest Holders shall be given the opportunity to make such Capital Contribution not otherwise made, in which case the Interest Holders hereby acknowledge that if they do not make a Capital Contribution or their Capital Contribution is less than the proportionate share they are entitled to make, such Person's Percentage Interest and Company Interest will be reduced as a result of the definition of Percentage Interest.

6.3    Interest and Return of Capital Contribution. No Interest Holder shall receive any interest on any Capital Contribution or positive Capital Account balance. Except as otherwise specifically provided for herein, the Interest Holders shall not be allowed to withdraw or have refunded any Capital Contribution or positive Capital Account balance.

6.4    Capital Accounts. Separate Capital Accounts shall be maintained for each Interest Holder in accordance with Section 2.1 of Exhibit B. After the Capital Contributions set forth in Section 6.1, the Capital Accounts of the Interest Holders will be as set forth in Exhibit A-1.

6.5    Loans to the Company. If the Company has insufficient funds to meet its additional obligations as they come due and to carry out its routine, day-to-day affairs, then, in lieu of obtaining required funds from third parties or selling its assets to provide required funds, the Company may, but shall not be required to, borrow necessary funds from one or more of the Members as designated by and on the terms and conditions approved by the Managers; provided that all Members are given the opportunity to participate in making such loans and the terms of

such loans are commercially reasonable. Affiliate Members and Disassociated Members are not entitled to participate in such loans unless otherwise permitted by the Managers.

6.6     Operating Distributions.

(a)     Operating Distributions. All distributions of cash or other property (except upon the Company's dissolution, which shall be governed by Article 10 hereof) ("Operating Distributions") shall be made at such time and in such amounts as determined by the Managers or as determined by the vote of a Majority of Members.

(b)     Tax Distributions. Notwithstanding Section 6.6, or any other provision of this Operating Agreement to the contrary, if the Operating Distributions in any taxable year of the Company are less than fifty percent (50%) of the net Profits and Losses of the Company for such taxable year then, within a reasonable time after the end of the Company's taxable year but in no event later than April 15, the Company shall make a cash distribution to the Members ("Tax Distribution") in an amount equal to the lesser of (i) the difference between the Operating Distributions for such taxable year and fifty percent (50%) of the net Profits and Losses allocated to the Members for such taxable year, or (ii) the cash on-hand on the date of distribution.

(c)     Allocation of Distributions. All Operating Distributions and Tax Distributions shall be made to the Interest Holders in proportion to their respective Percentage Interests. The Company is authorized to withhold from Operating Distributions, and to pay over to any federal, state, or local government any amounts required to be so withheld pursuant to the Code or any provisions of any other federal, state, or local law. All such amounts withheld shall be treated as amounts distributed to the relevant Interest Holders pursuant to this Section 6.6.

6.7     Allocations. After making any Special Allocations, Curative Allocations or Built-In-Gain Allocations, Profits and Losses, whether resulting from the Company's operations or in connection with its dissolution, shall be allocated to the Interest Holders' Capital Accounts in proportion to their respective Percentage Interests. Notwithstanding anything in this Operating Agreement, the Certificate or the Act to the contrary, the allocation of Profits and Losses to an Interest Holder's Capital Account hereunder, including any Special Allocation, Curative Allocation, and Built-In-Gain Allocation, do not entitle the Interest Holder to a corresponding Operating Distribution or, if applicable, a Liquidating Distribution. The amount and timing of Operating Distributions are set forth in Section 6.6(a) and shall be governed exclusively thereunder. The amount and timing of Liquidating Distributions shall be governed exclusively by Section 10.3.

## ARTICLE 7.
## RECORDS, REPORTS, ETC.

7.1     Books and Records. The Company shall maintain records and accounts of all operations and expenditures of the Company. At a minimum the Company shall keep at its principal place of business the following records:

(a)     A current list of the full name and last known business, residence, or mailing address of each Interest Holder, and Managers, both past and present;

(b)     A copy of the Certificate and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any amendment has been executed;

(c)     Copies of the Company's federal, state, and local income tax returns and reports, if any, for the three (3) most recent years;

(d)     Copies of this Operating Agreement and all amendments thereto, copies of any writings permitted or required under the Act, and copies of any financial statements of the Company for the three (3) most recent years; and

(e)     Minutes of every meeting of the Members or Managers and any written consents obtained from Members or the Managers for actions taken without a meeting.

7.2     Tax Return Information. On or before the due date for filing the Company's federal and state tax returns taking into account any extensions, a statement setting forth an Interest Holder's allocable share of the Company's taxable income or loss for such year determined in accordance with Code Section 703(a), including all items of income, gain, loss or deduction required to be separately stated pursuant to Code Section 703(a)(1), and all such other information as may be required to enable each such Person to prepare his or her federal, state, and local income tax returns in accordance with the Code, Regulations and any other applicable laws, rules, and regulations shall be delivered to such Interest Holder. The Company shall also prepare and file all federal, state and local income tax returns required of the Company for each fiscal year.

7.3     Financial and Operating Statements. The Managers shall provide financial statements at least annually to the Members and Affiliate Members at such time and in such manner as the Managers may determine reasonable.

7.4     Banking. The funds of the Company shall be kept in one or more separate bank accounts in the name of the Company in such banks or other federally insured depositories as may be designated by the Managers, or shall otherwise be invested in the name of the Company in such manner and upon such terms and conditions as may be designated by the Managers. All withdrawals from any such bank accounts or investments established by the Company hereunder shall be made on such signature or signatures as may be authorized from time to time by the Managers. Any account opened by the Managers for the Company shall not be commingled with other funds of the Managers or any other Person.

## ARTICLE 8.
## TRANSFER OF COMPANY INTERESTS

8.1     Restrictions on Transfer; Effect of Prohibited Transfer. Except for a Permitted Transfer, no Interest Holder shall Transfer all or any portion of such Interest Holder's Company Interests.

8.2     Permitted Transfers. Subject to the provisions of Sections 8.3 and 8.4, the restrictions on Transfer in Section 8.1 shall not apply to a Permitted Member Transfer as described in Section 8.2(a) or Permitted Affiliate Member Transfers described in Section 8.2(b) (each a "Permitted Transfer"):