Sheila R. Schwager, ISB No. 5059
Brent R. Wilson, ISB No. 8936
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 W. Main Street, Suite 200
P.O. Box 1617
Boise, ID 83701-1617
Telephone:  208.344.6000
Facsimile:  208.954.5261
Email: sschwager@hawleytroxell.com
        bwilson@hawleytroxell.com

Andrew J. Schoulder (*admitted pro hac vice*)
Francisco Vazquez (*admitted pro hac vice*)
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone:  212.318.3030
Email:  andrew.schoulder@nortonrosefulbright.com
        francisco.vazquez@nortonrosefulbright.com

Attorneys for Debtor Rabo AgriFinance LLC.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>MILLENKAMP CATTLE, INC.,<br><br>       Debtor. | Case No. 24-40158-NGH |
| Filing relates to:<br><br>☐ All Debtors<br>☒ Millenkamp Cattle, Inc.<br>☒ Idaho Jersey Girls<br>☒ East Valley Cattle<br>☐ Millenkamp Properties<br>☐ Millenkamp Properties II<br>☒ Millenkamp Family<br>☐ Goose Ranch<br>☒ Black Pine Cattle<br>☒ Millenkamp Enterprises | Jointly Administered With Case Nos:<br><br>24-40159-NGH (Idaho Jersey Girls)<br>24-40160-NGH (East Valley Cattle)<br>24-40161-NGH (Millenkamp Properties)<br>24-40162-NGH (Millenkamp Properties II)<br>24-40163-NGH (Millenkamp Family)<br>24-40164-NGH (Goose Ranch)<br>24-40166-NGH (Black Pine Cattle)<br>24-40167-NGH (Millenkamp Enterprises)<br>24-40165-NGH (Idaho Jersey Girls Jerome<br>       Dairy) |

RABO AGRIFINANCE LLC'S OBJECTION AND RESPONSE TO THE
DEBTORS' MOTION FOR PRELIMINARY INJUNCTION - 1

☒Idaho Jersey Girls Jerome Dairy,

Chapter 11 Cases

MILLENKAMP CATTLE, INC., an Idaho
corporation; EAST VALLEY CATLE, LLC,
an Idaho limited liability company; IDAHO
JERSEY GIRLS JEROME DAIRY, LLC, an
Idaho limited liability company;
MILLENKAMP FAMILY, LLC, an Idaho
limited liability company; MILLENKAMP
ENTERPRISES, LLC, an Idaho limited
liability company; BLACK PINE CATTLE,
LLC, an Idaho limited liability company;
IDAHO JERSEY GIRLS, LLC, an Idaho
limited liability company; BILL
MILLENKAMP, an individual; SUSIE
MILLENKAMP, an individual,

Adv. Case No.: 25-08007-NGH

                   Plaintiffs,

v.

RABO AGRIFINANCE, LLC, as Agent on
behalf of certain lenders including itself,

                   Defendant.

## RABO AGRIFINANCE LLC'S OBJECTION AND RESPONSE TO THE DEBTORS' MOTION FOR PRELIMINARY INJUNCTION

Rabo AgriFinance LLC, in its capacity as agent and secured lender (the "RLOC Agent"),

by and through its attorneys of record, hereby files this objection and response (the "Objection")

to the *Motion for Preliminary Injunction (Adv. Dkt. No. 2)* (the "Motion") filed on May 2, 2025,

by the Debtors Millenkamp Cattle, Inc., Idaho Jersey Girls, LLC, East Valley Cattle, LLC,

Millenkamp Family, LLC, Black Pine Cattle, LLC, and Millenkamp Enterprises, LLC (the

"Debtors") and William (Bill) Millenkamp and Susan (Susie) Millenkamp (collectively, the

"Millenkamps," and individually, "Mr. Millenkamp" and "Mrs. Millenkamp").

The Motion is set to be heard by this Court on May 14, 2025, at 9:00 a.m. (MT), in person. The RLOC Agent intends to present evidence through witnesses at the hearing and cross examine any witnesses called by the Debtors.

## I.  JURISDICTION, AUTHORITY, AND VENUE

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b).  This matter is a core proceeding and otherwise within the Court's constitutional authority to decide via a final order or judgment under 28 U.S.C. § 157(b)(2)(A) and (O).  This Court is the proper venue for this matter under 28 U.S.C. §§ 1408 and 1409.

The statutory and rule predicate for this Objection is 11 U.S.C. §§ 105 and 362 and Federal Rules of Bankruptcy Procedure 7001(g) and 7065.

## II.  INTRODUCTION

The RLOC Agent respectfully requests that the Motion be denied.

In clear disregard of the Court's comments at the hearing on the Original Motion[1] and the oral ruling of the Court as to that motion, the Debtors push ahead with the same arguments in the Adversary and the Motion, without even mentioning the Original Motion, the Original Objection, or the Court's comments and rulings on the Original Motion.  The legal impediments have already been pointed out and referenced by the Court, and they are overwhelmingly against what the Debtors request in the Motion.  The Debtors' continued attempt to benefit the Millenkamp Insiders is clear evidence that the Debtors' reorganization efforts are intended to benefit those parties, rather

---

[1]  Capitalized terms within this Introduction paragraph are as defined later in the Objection, unless otherwise indicated.

RABO AGRIFINANCE LLC'S OBJECTION AND RESPONSE TO THE
DEBTORS' MOTION FOR PRELIMINARY INJUNCTION - 3

than the Debtors and certainly not the Debtors' bankruptcy estates.  The Millenkamp Insiders are holding the Debtors, and their counsel captive, in a clear and continuing conflict of interest, to avoid the Millenkamps' own bankruptcy filing, at the expense of the Debtors' estates.  The Millenkamps have their own bankruptcy counsel, who signed the Adversary and the Motion.  If they would like the benefits of an automatic stay, then they should file their own bankruptcy.  Instead, the Millenkamps are expending the estates' resources, at a critical time in the reorganization process, weeks before the confirmation trial on competing chapter 11 plans filed by the Debtors and the RLOC Agent, to the detriment of the estates' creditors, to pursue the extension of the automatic stay, at this late stage in the chapter 11 cases.  If anyone is at fault for distracting Mr. Millenkamp from his duties to the Debtors and their estates, it is the Millenkamps and not the RLOC Agent.

Even if the Debtors were writing on a clean slate with respect to the relief requested in the Adversary and the Motion, the Debtors fail to meet the requirements to extend the automatic stay to non-debtors.  First, Mr. Millenkamp is the only non-debtor who even arguably—yet still falls well short—meets the standard to extend the automatic stay to non-debtors, pursuant to the applicable case law discussed in full below.  Mrs. Millenkamp and the Trusts admittedly have no involvement in the reorganization efforts or the running of the Debtors' business.  As a matter of law, therefore, the Court should not even consider those parties as possible beneficiaries of an extended automatic stay in these cases.

As to Mr. Millenkamp, he fails to meet the heightened legal requirements to extend the automatic stay to a non-debtor.  While Mr. Millenkamp may be "distracted" by the Equities Sale, these chapter 11 cases have proceeded to a point where the Debtors already have a conditionally

RABO AGRIFINANCE LLC'S OBJECTION AND RESPONSE TO THE
DEBTORS' MOTION FOR PRELIMINARY INJUNCTION - 4

approved disclosure statement and a chapter 11 plan on file, which the Debtors are seeking to have confirmed at a trial commencing on June 2, 2025. Therefore, Mr. Millenkamp has those significant steps in the life of a chapter 11 case behind him. Moreover, the "distraction" that Mr. Millenkamp has with respect to the Equities Sale is not sufficient, under the applicable case law, to meet the clear and convincing standard to extend the automatic stay to him as a non-debtor, for multiple reasons. Particularly problematic for the Debtors on this issue is that the Debtors' current plan is unconfirmable on its face rendering the reorganization of the Debtors unlikely, and thus the Debtors cannot establish a "strong likelihood" of a successful reorganization, as required under the applicable law, and as mentioned by the Court in its oral ruling on the Original Motion. In short, the Motion should be denied because the Debtors have not carried their high burden, of clear and convincing evidence, to extend the automatic stay to the Millenkamp Insiders.

### III.  RELEVANT FACTS AS TO THE MOTION

The Debtors and the Millenkamps filed this adversary proceeding (the "Adversary") on May 2, 2025. Adv. Dkt. No. 1. On the same day, those parties filed the Motion, along with the Declaration of Mr. Millenkamp, and Declaration of Matthew Christensen. Adv. Dkt. Nos. 2, 3, and 4, respectively. On May 5, 2025, the summons in this case was issued. *See* Adv. Dkt. No. 8.

The Adversary and the Motion seek to impose a preliminary injunction against the RLOC Agent, through June 6, 2025, to prevent the RLOC Agent from proceeding with its rights against non-debtors under that certain Third Amended and Restated Loan and Security Agreement, dated as of April 21, 2021, and pursuant to Idaho Code §§ 28-9-601, *et seq.* and Idaho Code §§ 28-9-101, *et seq.* to sell the equity interests pledged to the RLOC Agent (the "Equities Sale") by Mr.

Millenkamp, Mrs. Millenkamp, Mrs. Millenkamp, as Trustee of the WJM 2012 Trust, and Mr. Millenkamp, as Trustee of the SJM 2012 Trust (collectively, the "Millenkamp Insiders").

The Equities Sale is presently set to be conducted on May 28, 2025.  The RLOC Agent has received considerable interest in the Equities Sale by unrelated third parties interested in bidding at the sale.

Notably, this is not the first attempt in these chapter 11 cases that the Debtors have attempted to obtain the relief requested for the Millenkamp Insiders.  On April 11, 2025, the Debtors filed *Debtors' Motion for Entry of an Order Enforcing the Automatic Stay and Blocking Efforts to Foreclose on Equity Interest in the Debtors (Bankr. Dkt. No. 1076)* (the "Original Motion").  The RLOC Agent objected to the Original Motion on April 17, 2025, in its *Objection to Debtors' Motion for Entry of an Order Enforcing the Automatic Stay and Blocking the Efforts to Foreclose on Equity Interests in the Debtors (Bankr. Dkt. No. 1093)* (the "Original Objection").

The Original Motion, and the Original Objection, came before the Court for hearing on April 22, 2025.  The parties presented argument at the hearing.  On April 23, 2025, the Court provided its decision denying the Original Motion and sustaining the Original Objection.  Bankr. Dkt. Nos. 1120, 1121.  Among other things, the Court held the automatic stay does not apply to these non-debtor Millenkamp Insiders based on clear Ninth Circuit Court of Appeals authority, and that any future, possible actions taken by the RLOC Agent, in the event it is the successful purchaser at the Equities Sale, cannot form a basis for the Court finding an automatic stay violation now.  The Court further held that the automatic stay should not be extended to non-debtors under § 105(a) because of a procedural issue of failure to bring this request as an adversary proceeding, but importantly, the Court also noted that it has concerns about the ability of the Debtors' current

chapter 11 plan to be confirmed given, in part, the objections stated by the RLOC Agent and Conterra as to the facially defective plan.  The Court stated that the Debtors would need to address confirmation issues to the extent that an adversary proceeding was commenced.

Undaunted, and at the expense of the bankruptcy estates, as a clear litigation tactic to divert the RLOC Agent from focusing on trial preparation as to confirmation issues for its plan and opposing the Debtors' plan rapidly approaching on June 2, 2025, and in a clear conflict of interest, the Debtors and the Millenkamps commenced this Adversary and pursued the Motion, and only vaguely addressing the clear confirmation issues, despite the clear instruction by this Court. Counsel for the Millenkamps joined the Adversary and the Motion.[2]

The Adversary primarily seeks what is sought in the Motion, which is an injunction to enjoin the Equities Sale on May 28, 2025.  *See* Adversary at Count 1.  In order to support this relief, the Adversary points to the distraction on Mr. Millenkamp's time in the event of having to

_____

[2] Counsel for the Millenkamps has been involved in these bankruptcy cases since near their inception.  And, as pointed out in the Original Objection, the RLOC Agent's intent to pursue the Equities Sale has been on record in this case since at least October 2024, as noted in its Motion to Terminate Exclusivity.  Moreover, the Debtors have stated that the Millenkamps intend to file their own bankruptcy, if necessary, to protect their interests.  *See* Dkt. No. 1094, Exhibit A at 1 ("Bill and Susie Millenkamp are prepared (and are now preparing) to file their own personal Chapter 11 case in order to get a personal automatic stay[,] which would stop the sale of any of their personal ownership (i.e. not through the Trusts).").  Even with their own counsel and advanced notice of the Equities Sale, the Millenkamps have not filed their own bankruptcy case as they have threatened.  Instead, the Millenkamp Insiders have caused the Debtors to seek the relief sought in the Adversary Proceeding and in the Motion at the expense of the bankruptcy estates and wait until the last minute to seek the relief requested in the Adversary and the Motion.  The Debtors have pursued this relief for the second time despite the blatant conflict of interest of running these chapter 11 cases for the benefit of the Millenkamp Insiders.

RABO AGRIFINANCE LLC'S OBJECTION AND RESPONSE TO THE
DEBTORS' MOTION FOR PRELIMINARY INJUNCTION - 7

59797.0007.4918-7465-5809.1

defend the Equities Sale.  *Id.*  The Debtors state that Mr. Millenkamp is "essential to the success of the Debtors' reorganization and the Debtors' success." *Id.* at ¶ 32.

Beyond the injunction,[3] the Adversary also objects to the RLOC Agent's proof of claim, only to the extent of claimed interest calculations and the professional fees included.  *See id.* at Count 2.  Notably, the Debtors state no basis for their purported objection.[4]

In the Motion, the Debtors attempt to make their case for the injunction, focusing on the amount of time and effort Mr. Millenkamp will have to devote to the running of the Debtors' business, labelling him "indispensable," and for his time and effort working on the Debtors' reorganization efforts.  *Motion* at 6.  Mr. Millenkamp further provides his declaration to support this relief attempting to articulate the extent of his involvement in the case and his work to obtain confirmation of the chapter 11 plan already filed and served by the Debtors in this case.  *See Adv. Dkt. No. 3.*[5]  In further support of the Motion, the Debtors speculate as to what <u>may occur</u> at the

---

[3]  It should be noted that the Debtors' current plan has a method for objections to proofs of claim, which could have been followed by the Debtors in objecting to the RLOC Agent's proof of claim.  *See* Dkt. No. 991 at Article 8 (page 69).

[4]  A proof of claim is still valid unless the objector provides <u>sufficient</u> evidence of its invalidity.  *In re Holliday*, 2011 WL 2518845, at *2 (Bankr. D. Idaho June 23, 2011) (citing *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000).  Only upon the objector providing such sufficient evidence, does the burden shift to the claimant to further support its proof of claim.  *In re Holliday*, 2011 WL 218845, at *2.

[5]  As stated, the Debtors' chapter 11 plan and disclosure statement have already been filed.  Mr. Millenkamp therefore is not being "distracted" from the negotiations and drafting of the plan and disclosure statement because they have already been completed and are filed and served.

Equities Sale and what the RLOC Agent or any third party may do if it is the successful purchaser of the equities. *Motion* at 4.

Again, as stated above, the RLOC Agent believes, through its broker who is assisting it in marketing the equities, that there are many parties interested in the equities that will be offered at the Equities Sale. As such, not only is it speculative, at best, to say that the RLOC Agent will be the successful purchaser at the Equities Sale, given the third-party interest, it is even more speculative to state what the RLOC Agent or others will do to the Debtors' reorganization efforts after the equities are sold at the conclusion of the Equities Sale.

Further, absent from the analysis in the Motion is Mrs. Millenkamp's time and efforts that she needs to devote to the business or reorganization. Indeed, in prior testimony, Mr. Millenkamp has testified that Mrs. Millenkamp has no involvement in the Debtors' business. *See* Transcript of December 10, 2025 Hearing, page 71.

Instead, Mr. Millenkamp attempts to subsume the analysis as to Mrs. Millenkamp's pledged interests and those of the WJM 2012 Trust and the SJM 2012 Trust (the "Trusts"),[6] apparently because it would not only distract him to have his own assets sold in the Equities Sale but that it would also distract him to have those separate pledges foreclosed by the RLOC Agent in the Equities Sale. The Debtors cite no case authority finding this is an appropriate extension of the automatic stay to parties who clearly and admittedly have no part in running the debtor or

---

[6]   It should be noted that the Adversary is not commenced as to the Millenkamps in their capacities as trustees of the Trusts.

working on the reorganization efforts, simply because another principal of the debtor would be "distracted" by it.

## IV.  LAW AND ARGUMENT

The Debtors fail to meet their high burden of clear and convincing evidence in the Motion and the Adversary to establish that the Court should extend the automatic stay to the non-debtors Millenkamp Insiders.  The Motion should be denied.

### A.    The Automatic Stay and Extension of the Stay Generally.

The automatic stay does not protect non-debtor parties or their property.  *Chugach Timber Corporation v. Northern Stevedoring & Handling Corporation (In re Chugach Forest Products, Inc.)*, 23 F.3d 241, 246 (9th Cir 1994); *see also Boucher v. Shaw*, 572 F.3d 1087, 1092 (9th Cir. 2009) ("As a general rule, the automatic stay protects <u>only</u> the debtor, property of the debtor or property of the estate.") (emphasis in original); *Advanced Ribbons & Off. Prods., Inc. v. U.S. Interstate Distrib., Inc. (In re Advanced Ribbons & Off. Prods., Inc.)*, 125 B.R. 259, 263 (9th Cir. BAP 1991) (holding the automatic stay "does not protect non-debtor parties or their property") (hereinafter, *"In re Advanced Ribbons"*).

Instead, "it is universally acknowledged that the automatic stay . . . may not be invoked by entities such as sureties, guarantors, co-obligors or others with a similar legal or factual nexus to the . . . debtor."  *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194 (6th Cir.1983); *see also Boucher*, 572 F.3d at 1093 (stating "our case law regarding guarantors, sureties and other non-debtor parties who are liable for the debts of the debtor leaves no doubt about the answer" that such parties are not protected by the automatic stay); *In re Advanced Ribbons*, 125 B.R. at 263 (noting "[i]t is well-established that section 362(a) of the Bankruptcy Code does not stay actions

against non-debtor guarantors, sureties, corporate affiliates, or other parties liable on the debts of the debtor").

Importantly, the Ninth Circuit has held that "the automatic stay does not protect the property of parties such as officers of the debtor, even if the property in question is stock in the debtor corporation, and even if the stock is pledged as security for the debtor's liability." *Boucher*, 572 F.3d at 1092-93 (9th Cir. 2009) (citing *In re Advanced Ribbons*, 125 B.R. at 263).

In *In re Advanced Ribbons*, after default, the company debtor filed a chapter 11 bankruptcy. Postpetition, the creditor foreclosed on the stock the debtor's principal held in the debtor via a foreclosure sale pursuant to a pledge agreement the principal executed in favor of the creditor. The debtor thereafter asserted that the sale of the principal's interest of the debtor in the foreclosure sale violated the automatic stay. The bankruptcy court determined that the foreclosure sale did not violate the automatic stay and the BAP affirmed. In so holding, the BAP promptly disregarded any suggestion that the stock in the debtor was property of the estate (*i.e.*, the automatic stay under 11 U.S.C. § 362(a)(3) was not implicated). *Id.* at 262-63, n.6. As to whether the sale of equity in the debtor violated the automatic stay under 11 U.S.C. § 362(a)(6), the BAP concluded that the foreclosure sale of the principal's interest was similar to an attempt to collect on a guaranty from a non-debtor entity, which is not impacted by the automatic stay as a matter of law. *Id.* at 264.

Further, in rejecting the principal's argument that a broad application of the stay should be applied because otherwise it allows some creditors, "to obtain preferential treatment by allowing them to obtain control of the debtor and ultimately its assets," the Court stated:

> There are also, however, countervailing policy concerns. Essentially, this is a <u>dispute between non-debtor parties</u> as to who owns property that is <u>not an asset of the estate</u>. The fact that the asset is the stock of the debtor and the fact that control of that asset

> allows for control of the debtor implicate, to a certain extent, the policies and purposes of the Bankruptcy Code. This dispute, however, has no impact upon the estate that will be available for distribution to the creditors because whoever controls the debtor will be held to fiduciary standards in its dealing with the debtor's assets. To the extent the appellees receive preferential treatment, <u>they do so only by virtue of their enforcement of state law and contractual rights against a non-debtor party</u>. The cases allowing actions to proceed against non-debtor guarantors implicitly recognize that such preferential treatment is permitted by the Bankruptcy Code.

*Id.* at 266 (emphasis added); *accord Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086 (9th Cir. 2007) (holding automatic stay not applicable to proceedings with debtor's former CEO and major shareholder); *In re MBE Digital, Inc.*, 2016 WL 6699313, at *1 (9th Cir. BAP Nov. 9, 2016) (holding automatic stay not applicable to fee order against debtor's shareholder); *Lukas, Nace, Gutierrez & Sachs, Chartered v. Havens*, 245 B.R. 180 (D.D.C. 2000) (holding automatic stay not applicable to debtor's principal); *In re Nashville Album Prods., Inc.*, 33 B.R. 123, 124 (M.D. Tenn. 1983) (stating "[a] reading of § 362 clearly reveals no support for the debtor's position that the stay prohibits entities from proceeding against officers, directors and/or stockholders of a corporation which has filed a bankruptcy petition").

In order to extend the automatic stay to third parties, the debtor must establish the "<u>unusual need</u>" to extend the automatic stay via an injunction issued from the bankruptcy court. *Colucci v. MPC Computers LLC Severance Plan for Employees*, 2011 WL 4583821, at *8 (D. Idaho 2011) (emphasis added) (citations omitted).  In this context, the party seeking to extend the automatic stay is required to satisfy the preliminary injunction standard. *Id.*; *see also Boucher*, 572 F.3d at 1093 n.3; *In re Chugach Forest Prods., Inc.*, 23 F.3d at 247 n.6; *In re Ripon Self Storage, LLC*, 2011 WL 3300087, at *6; *In re Rhino Rush, LLC*, 2019 WL 1418490, at *3 (Bankr. D. Idaho Mar. 27, 2019).

RABO AGRIFINANCE LLC'S OBJECTION AND RESPONSE TO THE
DEBTORS' MOTION FOR PRELIMINARY INJUNCTION - 12

Significantly and importantly, the moving party must show "an actual, <u>not just a theoretical,</u> likelihood of harm to the reorganization . . . before the automatic stay may be extended to protect non-debtors." *FFPDA II, LLC v. Larin, (In re FPSDA I, LLC)*, 2012 WL 6681794, at *14 (Bankr. E.D.N.Y. 2012) (emphasis supplied). "It is not enough for the movant to show some limited risk or that there is a theoretical threat to the reorganization, because it is always the case that a lawsuit against principals of the Debtor <u>could</u> have <u>some</u> effect on the reorganization." *Id.* at *8 (emphasis in the original).

Moreover, because extension of the automatic stay to protect non-debtor parties is the exception—not the rule—the movant must show by "<u>clear and convincing evidence</u>" that extension of the stay is warranted. *Id.* at *8 (emphasis added). When the automatic stay is extended, it is limited in scope and time. *In re PTI Holding Corp.*, 346 B.R. 820 (Bankr. D. Nev. 2006). Further, bankruptcy courts lack the power to issue injunctions that outlast plan confirmation. *In re Excel Innovations, Inc.*, 502 F.3d at 1095.

## B.    Legal Requirements to Extend the Automatic Stay to Non-Debtors.

Section 105(a) is the operative Code provision to extend the automatic stay to non-debtors, which section authorizes a bankruptcy court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C § 105(a). In order to extend the automatic stay via § 105(a), the Debtors must demonstrate: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the Debtors if preliminary relief is not granted; (3) a balance of hardships favoring the Debtors; and (4) advancement of the public interest (if relevant). *In re Excel Innovations, Inc.*, 502 F.3d at 1093.

The "most important factors in this test are 'likelihood of success on the merits' and 'presence of irreparable harm.'"  *In re Mariner Health Cent., Inc*., 2023 WL 187175, at *10 (Bankr. N.D. Cal. Jan. 12, 2023) (citing to *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999)).  Despite the ability to extend the automatic stay to non-debtors, "courts should be very careful about extending the stay."  *In re Mariner Health Cent., Inc.* 2023 WL 187175, at *9.

<u>Strong likelihood of success on the merits.</u>  In this context, "likelihood of success" requires a court to consider that "(a) providing the debtor's management a breathing spell from the distraction of other litigation is necessary to permit the debtor to focus on the reorganization of its business <u>or</u> (b) because it believes the parties may ultimately be able to negotiate a plan that includes a consensual resolution of the claims against the non-debtors."  *In re Parlement Techs., Inc.*, 661 B.R. 722, 724 (Bankr. D. Del. 2024) (emphasis in original); *see also In re Hal Luftig-Company, Inc*. 2025 WL 586757, at * 15 (Bankr. S.D.N.Y. Feb. 24, 2025).  In this instance, neither factor supports the supports the extension of the automatic stay to a non-debtor, which will be discussed below.

Before getting to that analysis, in the Ninth Circuit, "strong likelihood of success," requires a "more exacting" standard of "particularized evidence of likelihood of plan confirmation."  *See, e.g.*, *In re Roman Catholic Diocese of Rockville Centre, New York*, 651 B.R. 622, 652 (Bankr. S.D.N.Y. 2023) (comparing the standard in the Ninth Circuit to meet this prong to the standard under the Second Circuit, stating "*Mariner Health* seemed to be imposing a more exacting standard under the Ninth Circuit's decision in *In re Excel Innovations, Inc.*, and required particularized evidence of likelihood of plan confirmation") (citing *In re Mariner Health Cent., Inc.*, 2023 WL 187175, at *1 (Bankr. N.D. Cal. Jan. 12, 2023) and *In re Excel Innovations, Inc.*, 502 F.3d at 1097).

RABO AGRIFINANCE LLC'S OBJECTION AND RESPONSE TO THE
DEBTORS' MOTION FOR PRELIMINARY INJUNCTION - 14

"A chapter 11 case 'may be considered likely to succeed so long as the prospects of reorganization remain viable and if the Debtors are substantially more likely to reorganize with the injunction in place.'"  *In re SVB Fin. Grp.*, 2023 WL 2962212, at *7 (Bankr. S.D.N.Y. Apr. 14, 2023) (quoting *In re Purdue Pharms. L.P.*, 619 B.R. 38, 59 (S.D.N.Y. 2020) (internal citations and quotation marks omitted)).

Applying these principles, under the "exacting standard" in the Ninth Circuit, the Debtors' current chapter 11 plan—the Insider Plan—is not confirmable and thus there is no showing of a likelihood of success.  The extent of the legal defects to the Insider Plan are overwhelming.  The following table summarizes some of the blatant defects.[7]

| Insider Plan Provision | Summary of Objection |
| --- | --- |
| Section 3.11 provides, among other things, that (1) the RLOC Agent's secured claims will be subordinated from a prepetition first position on personal property and second lien position on real estate by a $23 million "priming exit facility," (2) the RLOC Agent will receive interest only payments on a monthly basis at 9.5% per annum, (3) the RLOC Agent will not receive any principal payments until August 2026, and (4) the RLOC Agent will receive payment in full on | The RLOC Agent is not being provided its indubitable equivalent, as required under the Code.<br><br>Section 1129(b)(1) of the Bankruptcy Code provides that, for a plan to be "crammed down" on an objecting class, it must be "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan. 11 U.S.C. § 1129(b)(1).<br><br>The Insider Plan fails to provide the RLOC Agent with the indubitable equivalent of its claim (i.e., fair and equitable treatment) by |

[7]  The RLOC Agent incorporates by reference the analysis as it argued on the Debtors' plan confirmation issues within the *RLOC Agent's Objection to Disclosure Statement (Dkt. No. 1027)* (pages 6-29), and the following table is meant to streamline the review of the clear legal impediments to confirmation that exist in the Debtors' amended chapter 11 plan (Dkt. No. 991), which the Debtors have failed to address in the Adversary or the Motion despite the Court's comments during the April 23, 2025 oral ruling.  The RLOC Agent hereby further reserves its rights to amend and supplement the objections stated as to the Insider Plan at the trial on confirmation.

| | |
|---|---|
| December 1, 2027 (subject to extension under section 5.10 of the Insider Plan). | subordinating its lien to the DIP Lender post-effective date. *See In re Murel Holding Corp.*, 75 F.2d 941, 942 (2d Cir. 1935) (holding that the bankruptcy statute did not intend to "deprive" a mortgagee of his first-position lien "unless by a substitute of the most indubitable equivalent"). |
| | In addition, the Insider Plan does not provide "certainty of payment beyond a reasonable doubt." *See, e.g., In re Hollister*, Case No. 21-55380, 2021 WL 6124757, at *1 (9th Cir. Dec. 28, 2021) ("too evident to be doubted"; proposed priming loan did not provide primed lienholder with indubitable equivalent); *In re Inv. Co. of The Sw., Inc.*, 341 B.R. 298, 324 (10th Cir. BAP 2006) ("the absence of any reasonable doubt that the secured creditor will receive the payments to which it is entitled"). |
| | Here, there is significant doubt that the RLOC Agent will be paid under the Insider Plan given the contingencies for payment. For example, the Debtors will only begin to pay down the principal owed to the RLOC Agent after they pay the DIP Lender in full, which payment is subject to the sales of Canyonlands and McGregor, of which there is no current buyer and which sales may not yield the total proceeds contemplated by the Insider Plan. While the Debtors anticipate that such payments will begin in August 2026, there is no reason to believe they will be in a position to make such payments. |
| | Further, the Insider Plan does not provide the RLOC Agent with interest at the market rate or commensurate with the risks in this case. *See, e.g., In re LightSquared Inc.*, 513 B.R. 56, 93 (Bankr. S.D.N.Y. 2014) ("there be no doubt that replacement recoveries are equal to existing security interests"). |

**RABO AGRIFINANCE LLC'S OBJECTION AND RESPONSE TO THE DEBTORS' MOTION FOR PRELIMINARY INJUNCTION - 16**

| | Finally, the Insider Plan provides an illusory repayment deadline, which remains subject to extension upon the consent of MetLife (in violation of intercreditor agreements and implicating issues under section 510(a) of the Bankruptcy Code). Clearly, granting the Debtors with the ability to extend the deadline to repay the RLOC Agent renders the proposed treatment less than the indubitable equivalent of the RLOC Agent's claim.

11 U.S.C. § 510 makes enforceable in bankruptcy subordination agreements. *See Sedgwick FundingCo, LLC v. Newdelman (In re Grail Semiconductor)*, Case No. 15-29890, 2022 WL 194384, *22 (Bankr. E.D. Calif. Jan. 20, 2022) ("As a rule, bankruptcy courts will enforce intercreditor agreements."). |
|---|---|
| Section 5.6 provides that the RLOC Agent shall release its lien on the equity in the Reorganized Debtors for no consideration if the Reorganized Debtors raise cash by selling equity (or other assets) with such proceeds to be used to pay MetLife and Sandton | It is clear that the RLOC Agent would not be receiving the indubitable equivalent of its claim by allowing the stripping of its lien in the equity interest for the benefit of MetLife, which does not have a lien on the equity and would be in violation of intercreditor agreement, and for the benefit of the DIP Lender. Indeed, such an unprecedented provision would also evidence unfair discrimination towards the RLOC Agent and implicate additional issues under section 510(a) of the Bankruptcy Code. |
| Section 12.2.1 provides that "default terms" in the Pre-Petition RLOC Documents are superseded by the Insider Plan and shall have no effect unless re-stated or otherwise incorporated by subsequent amendments. | Consequently, the RLOC Agent's existing rights and covenants under the Pre-Petition RLOC Documents may be stripped resulting in the RLOC Agent not receiving the indubitable equivalent of its claim. For example, the Debtors could liquidate the RLOC Agent's collateral post-effective date without any consequence to the Debtors. |
| Section 3.16 provides "Each Debtors' prepetition equity interests shall remain the same post-petition. Class 15 Claim Holders are retaining ownership interest in the Debtors | Section 3.16 violates the absolute priority rule. See, e.g., *In re Ambanc La Mesa Ltd. P'Ship*, 115 F.3d 650, 654 (9th Cir. 1997) ("The plan violates the absolute priority rule |

| | |
|---|---|
| subject to the terms and conditions of the DIP Order." | [unless] the former equity holders provide new value to the reorganized debtor, under the 'new value corollary' to the absolute priority rule.").<br><br>In addition, the Debtors have failed to market the equity interests in blatant disregard of the absolute priority rule. *See, e.g.*, *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 435 (1999) |
| Section 3.11 of the Insider Plan disputes interest and attorney fees of the RLOC Agent. | 11 U.S.C. § 506(d) provides that a holder of an oversecured claim is entitled to "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or state statute under which such claim arose."<br><br>The RLOC Agent has shared its calculation of its claims with the Debtors.<br><br>While the Debtors have filed this Adversary objecting to the RLOC Agent's claim, as to fees and interest, it still has failed to articulate a basis for the objection, other than stating that the Debtors do object.<br><br>This is evidence of a lack of good faith and unfair discrimination, among other things. |
| Section 10.3 of the Insider Plan exculpates the Exculpated Parties, which as defined includes the Debtors and their Related Parties, including Mr. Millenkamp. for, among other things, actions taken in connection with, or related to the Chapter 11 Cases. | Mr. Millenkamp is receiving this exculpation for free, which should render the Insider Plan unconfirmable on its face. |
| Section 10.3 further provides: "To be clear, nothing in this Section 10.3 acts as a release of any liability of any party as a co-obligor or guarantor for any of the amounts owed to MetLife, Conterra or the DIP Lender." Section 10.2 contain similar language. | By glaring omission, it appears that the Insider Plan attempts to provide non-debtors a disguised release from their obligations to the RLOC Agent. This would unquestionably violate the Supreme Court's holding in *Harrington v. Purdue Pharma, L.P.*, 603 U.S. 204, 215 (2024) ("a discharge operates only for the benefit of the debtor against its creditors and "does not affect the liability of |

| | |
|---|---|
| | any other entity."). Moreover, it is further evidences unfair discrimination towards the RLOC Agent. |
| Section 12.2.2 provides that any defaults by the Debtors under any non-bankruptcy agreement shall be deemed cured and notice of default … prior to the Effective Date shall be deemed null, void, and to have no further force or effect. | This provision is another disguised release for the benefit of non-debtors. This provision would result in the Millenkamp Insiders no longer being deemed to be in default under the Pre-Petition RLOC Credit Agreement despite the passage of the maturity date in June 2022. As noted above, this is impermissible under the Supreme Court's holding in *Purdue Pharma*. |
| Generally, the Insider Plan is not feasible. | 11 U.S.C. § 1129(a)(11) requires a means for implementation of the plan as well as that the plan be feasible for confirmation. The Insider Plan is not feasible for several reasons, only some of which are highlighted here.<br><br>First, the sale of Canyonlands and McGregor is a "visionary scheme." Under the Insider Plan, the Debtors anticipate to close on the sale of those properties by November 30, 2025, but they have not actively marketed them or identified a buyer yet.<br><br>Second, the Insider Plan exposes creditors to a high probability of default under Section 12.2.1 of the Insider Plan shortly after the Effective Date.<br><br>The RLOC Agent objected to the Sandton DIP Facility on the basis that the Debtors were incapable of repaying the borrowings thereunder, which is now further evidenced by the Insider Plan and the Debtors' inability to pay the DIP Facility in full, in cash, on the Effective Date.<br><br>Third, the Insider Plan purports to repay the RLOC Agent in full through a refinancing on or before December 1, 2027. However, the Debtors have failed to refinance over the |

| | course of the past three years and are now further in debt, after incurring the additional $23 million in DIP Financing, which they are unable to timely pay. The 2027 refinancing is nothing more than a proverbial "hope note" that, according to established case law, insufficient to satisfy the requirements of the "feasibility test." |
| --- | --- |
| | Establishing feasibility requires more than a "promise, hope, or unsubstantiated prospect of success." *Id.*; *see also In re Smitty Inv. Grp., LLC*, No. 07-00020-TLM, 2008 WL 2095523, at *7 (Bankr. D. Idaho May 16, 2008) (where projections "are incredible or simply unrealistic" or "[w]hen the financial realities do not support the projections or where the proponents' projections are unreasonable," the court should find the plan not feasible and refuse to confirm it.). |
| Section 3.14 provides a convenience class of unsecured creditors will be paid in full, in cash, on the effective date. Other unsecured creditors will, beginning on the effective date, receive interest only cash payment based on the amount of their outstanding claims at 7% per annum.

The Insider Plan further provides that the Debtors may pay all general unsecured claims in full as early as a day after the effective day through 30 months thereafter (subject to a 6-month extension upon the consent of MetLife) provided that the payoff amount will be reduced by the Creditors' Committee's professional fees and interest payments made to general unsecured creditors post-effective date. | Payment of general unsecured creditors before the RLOC Agent, whose claim matured almost 3 years ago, violates basic priority rules, does not comply with the fair and equitable requirement, and evidences unfair discrimination against the RLOC Agent.

Between the proposed reinstatement of the equity of the Millenkamp Insiders for no consideration and the treatment being proposed for general unsecured creditors, the Insider Plan is an outright attack on the "basic priority rules" of the Bankruptcy Code and is patently incapable of satisfying the "fair and equitable" requirement. 11 U.S.C. § 1129(b)(1). *See, e.g., Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 465 (2017) (rejecting the "backdoor means," in that case via a structured dismissal of a chapter 11 case, that was determined to be "priority-violating" under the Bankruptcy Code to elevate junior creditors above senior ones); *see also In re Hertz Corp.*, 120 F.4th 1181, 1200 (3d Cir. |

|  | 2024) ("In other words, the Bankruptcy Code entitles every creditor—not just the dissenting impaired class who can invoke § 1129(b)—to treatment consistent with absolute priority absent a clear statement to the contrary.") (citing *Jevic Holding Corp.*, 580 U.S. at 465) (footnotes and other citations omitted)); *In re Glob. Fertility & Genetics New York, LLC*, 663 B.R. 584, 609 (Bankr. S.D.N.Y. 2024) (noting the expansive inquiry under the "fair and equitable" standard, which includes but is not limited to the absolute priority rule). |
|---|---|

Even setting aside these insurmountable impediments to confirmation, applying the standard as articulated by the court in *In re Parlement Techs., Inc.*, Mr. Millenkamp is the only non-debtor involved in the management of the Debtors' businesses, operations, and reorganization. Mrs. Millenkamp and the Trusts certainly and admittedly are not. Therefore, the only true analysis as to whether to extend the automatic stay to a non-debtor party is as to Mr. Millenkamp himself, not the other Millenkamp Insiders.

And Mr. Millenkamp has had over a year-long breathing spell to manage the Debtors and to come up with a confirmable plan. No amount of additional breathing spell will result in Mr. Millenkamp managing the Debtors in a way that advances a possible reorganization of the Debtors in the best interests of creditors or the estates, which conclusion may be reached by simply reviewing the Debtors' current chapter 11 plan. Instead, he has used these bankruptcy cases to divert the Debtors to advance a chapter 11 plan that blatantly violates the Bankruptcy Code, in multiple ways, to the benefit of the Millenkamp Insiders, and has directed the Debtors to expend significant time, effort, and money, during a particularly busy time of the confirmation hearings in these cases, to pursue the Adversary and Motion, also to the benefit of the Millenkamp Insiders. Seemingly, Mr. Millenkamp has made these directives to the Debtors, which the Debtors have

heeded in a clear conflict of interest, to avoid a personal bankruptcy that he and his wife have threatened but not followed through with filing, despite having active counsel in this case to do so on their behalf.

Second, most troubling, these self-serving efforts—first, the Motion and now the Adversary—have all occurred under the supervision and authority of the chief restructuring officer, Rob Marcus, whom should be acting instead as a fiduciary to the Debtors' creditors.

Third, given the Debtors' intent to pursue confirmation of the current chapter 11 plan, which again blatantly violates the Bankruptcy Code throughout, the Debtors (as currently managed by Mr. Millenkamp) have no intent to negotiate a plan that consensually resolves all claims against the non-debtors, including him.  This is particularly true when, as admitted by the Debtors, the Debtors did not negotiate a resolution with the RLOC Agent at the judicial settlement conference or thereafter.  Further evidence of this is the discriminatory way the RLOC Agent's claims are proposed to be treated under the Debtors' current chapter 11 plan.

Finally, the Debtors already have a chapter 11 plan filed and a disclosure statement conditionally approved, which plan they are seeking to have confirmed at the trial beginning on June 2, 2025.  As such, Mr. Millenkamp needs no breathing spell to come up with the terms of that plan or to negotiate with the creditors in that context.  It is already done.  *See, e.g. In re Roman Catholic Diocese of Rockville Centre, New York*, 651 B.R. at 652 (discussing cases holding that extensions of the stay under the likelihood of success prong typically are given to debtors in the early stages of the chapter 11 cases when a plan has not been filed and contrasting that to the case before that court that had two competing plans with the debtor's plan facing legal impediments to confirmation, and stating "reliance on a non-consensual plan can also be probative evidence that a

successful reorganization is less likely"); *see also In re Mariner Health Central, Inc.*, 2023 WL 187175, at *13 (noting that a "weak showing on the likelihood of successful reorganization" the debtors' burden is "heightened" on the irreparable harm element) (quoting *In re Excel Innovations*, 502 F.3d at 1099) (quotation marks omitted)).

Based on this analysis, this factor, being one of the "most important" (*see In re Mariner Health Cent., Inc.*, 2023 WL 187175, at 10), is not met by the Debtors in the Adversary or the Motion.  As such, the Motion should be denied.

The possibility of irreparable injury to the Debtors if preliminary relief is not granted.  In this context, "the 'irreparable harm' requirement is satisfied where the action sought to be enjoined would embarrass, burden, delay or otherwise impede the reorganization proceeding, or if a stay is necessary to preserve or protect the debtor's estate and reorganization prospects."  *In re SVB Fin. Grp.*, 2023 WL 2962212, at *8 (internal quotation marks and citation omitted).  Speculative injury cannot be the basis for a finding of irreparable harm.  *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir.1984).  As stated, when the debtor is weak on proving a "successful reorganization"—clearly present here—the irreparable harm element is "heightened."  *In re Mariner Health Central, Inc.*, 2023 WL 187175, at *13 (citations omitted).  A height the Debtors cannot reach.

Applying these principles, only one of the Millenkamp Insiders has anything to do with the Debtors' operations (*i.e.*, Mr. Millenkamp).  As a result, the Debtors cannot assert that the Equities Sale will have a negative impact as to materially impede the Debtors' chapter 11 cases as to Mrs. Millenkamp or the Trusts, where Mrs. Millenkamp (by Mr. Millenkamp's own admission) is not

involved in the operation of the Debtors, and the Trusts are effectively inert entities, created solely for personal estate and tax planning purposes.[8]

As argued in the Original Objection, the Debtors in seeking the extension of the automatic stay conflate injury to the Millenkamp Insiders, particularly Mr. Millenkamp, versus injury to the Debtors, which is a reoccurring theme in these cases and reveals the true intended beneficiaries of these chapter 11 cases. Although, it is true that, and depending on what occurs by the ultimate purchaser at the Equities Sale, the Millenkamp Insiders may not be able to retain, <u>for free</u>, their equity interests in the reorganized Debtors along with the releases and exculpations, <u>again for free</u>. Yet, the Debtors and their estates are not harmed by the sale of the non-debtors' pledged equity interests. *See Martin v. Tap Resources, LLC*, 519 F. Supp.3d 961, 970 (D. N. Mex. 2021) (stating "it is the debtor's interests, and not the interests of non-debtors, which the extraordinary remedy is directed at").

In fact, the Debtors and their estates could and likely would benefit from such an action. At that point, the equity holder may have the financial wherewithal to fulfill the Debtors' commitments under the Insider Plan or support or submit a confirmable plan as well as seek to at least investigate (and perhaps pursue) claims held by the bankruptcy estates against the Millenkamp Insiders and other insiders. *See In re Marvel Entertainment Group*, 209 B.R. 832, 838 (Bankr. D. Del. 1997) (stating "the fact that the shareholders' action may be motivated by a desire to arrogate more bargaining power in the negotiation of a reorganization plan, without more,

---

[8] The trusts are not eligible for bankruptcy protection. 11 U.S.C. § 109(a). *See In re Hunt*, 160 B.R. 131, 136 (B.A.P. 9th Cir. 1993) (stating "neither a non-business trust nor the trustee solely in a representative capacity are persons eligible for chapter 11 protection").

RABO AGRIFINANCE LLC'S OBJECTION AND RESPONSE TO THE
DEBTORS' MOTION FOR PRELIMINARY INJUNCTION - 24

59797.0007.4918-7465-5809.1

does not constitute clear abuse.").  Further, and significantly, the sale proceeds from the sale of the equities would reduce the obligations owed by the Debtors to the RLOC Agent, allowing the Debtors access to funds to pay more promptly to other creditors.  *See In re Chugach Forest Products, Inc.*, 23 F.3d at 247.

Moreover, the Debtors speculate as to what <u>may</u> occur at the Equities Sale and what the ultimate purchaser <u>may</u> do upon owning the equities foreclosed upon by the RLOC Agent, despite this Court's comments at the oral ruling on April 23, 20225.  These potential future actions are hypothetical and are speculative at best.  These facts have not come to pass, as the Court articulated at the hearing on the Original Objection and are unquestionably premature.  In any event, these are speculative injuries that cannot satisfy this element of the analysis.  *See Goldie's Bookstore, Inc.*, 739 F.2d at 472.

Primarily, the Debtors argue under this element of the test, that Mr. Millenkamp will be distracted from the efforts to run the Debtors and to focus on the reorganization process.  However, "distraction" alone is likely not sufficient to meet the requirements of this element, particularly when the likelihood of successful reorganization is not clearly shown.  *See, e.g.*, *In re Roman Catholic Diocese of Rockville Centre, New York*, 651 B.R. at 664-65 (addressing the "distraction" argument under this element, collecting cases, and stating "even in cases where courts have granted injunctions primarily based on the distractions of litigation against non-debtors, the debtors counterbalance their reliance on the distraction factor by making a clear showing that they have a reasonable likelihood of success[,]" meaning a likelihood of a successful reorganization).  No clear showing has been made that the Debtors have a plan that is capable of confirmation.  In fact, the opposite is true for the reasons stated herein.

The best the Debtors muster on this issue in the Motion, despite this Court's comments at the oral ruling on April 23, 2025, is: "The Debtors anticipate broad support for their plan . . . . The Debtors assert that their plan is confirmable, even over the objections submitted by [the RLOC Agent] and Conterra."  *Motion* at 4.  This is hardly sufficient.  And, it goes without saying, but "broad support" for a plan that violates the Bankruptcy Code does not override the strictures and requirements of the Code.  For these reasons, the Debtors do not meet the "heightened standard" under this element.

A balance of hardships favoring the Debtors.  In considering whether to grant injunctive relief, a bankruptcy court must "identify the harms which a preliminary injunction might cause to defendants and . . . weigh these against plaintiff's threatened injury."  C*aribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 676 (9th Cir.1988) (citation omitted).  Under this element, the Debtors are required to decidedly demonstrate substantial and immediate harm.  *In re FPSDA I, LLC*, 2012 WL 6681794, at *16.

As asserted above, the Equities Sale could assist, rather than impede, the Debtors and their efforts to reorganize.  The Debtors advocate for the Millenkamp Insiders in the Motion—not the Debtors—again putting a spotlight on the conflict of interest.  The Equities Sale will impact the Millenkamp Insiders' equity interests alone.  What the Equities Sales will or will not do is pure speculation.  Moreover, it is even greater speculation to assert, as the Debtors do in the Adversary, that "local businesses" doing business with the Debtors will "likely also fail" in the event of the Equities Sale.  *Adversary* at ¶ 40.

The direct result of the Equities Sale is that the ownership of the Debtors will change.  That it is a "hardship" for the Millenkamp Insiders to no longer own the Debtors as they did prior to the

foreclosure of their equity interests, and that they will no longer be given the equity in the reorganized debtors for free along with their free releases and exculpations, are irrelevant to this analysis.  Keeping the Millenkamp Insiders from the reinstatement of equities and receipt of disguised releases and exculpations for free is not a hardship—it is what the Debtors should be doing to comply with their fiduciary duties and the Bankruptcy Code.

Further, the Debtors ignore the harm to the RLOC Agent in not being able to seek recovery from the non-debtor secured collateral on a loan that matured nearly three years ago.  Notably, the Debtors have made it clear they intend to impede the RLOC Agent's recovery rights through the Insider Plan, regardless of the requirements of the Bankruptcy Code.  The Debtors further propose in the Insider Plan to strip the RLOC Agent's lien against the equity interests (in favor of other secured creditors, which have no lien on such interests), while attempting to prevent the RLOC Agent from carrying through with its rights in this action.  There is simply no justification for contending that the RLOC Agent should be precluded from exercising its secured contractual rights against non-debtor parties, particularly when the Court is provided the Insider Plan, which is incapable of being confirmed.  To so hold would be a hardship to the RLOC Agent and a divesting of rights freely contracted prior to these bankruptcy cases.

Public Interest.  The "aims of the bankruptcy scheme" are to "promote reorganization" and "protect [the debtor's] creditors."  *United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1492 (9th Cir.1993).  *See also In re PTI Holding Corp.*, 346 B.R. 820, 832 (Bankr. D. Nev. 2006) (noting "[t]he public interest in successful reorganizations is significant"); *In re Monroe*, 67 B.R. at 755 (Bankr. E.D. Pa. 1986) (stating the fourth factor for injunctive relief "requires a balancing of the public interest in successful bankruptcy reorganizations with other competing societal interests");

RABO AGRIFINANCE LLC'S OBJECTION AND RESPONSE TO THE
DEBTORS' MOTION FOR PRELIMINARY INJUNCTION - 27

*A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1008 (4th Cir. 1986) (stating "promoting a viable reorganization of the debtor" is in the "unquestioned public interest").

Therefore, "when there is no reasonable likelihood that the statutory objective of reorganization can be realized . . . then the automatic stay and other statutory provisions designed to accomplish the reorganization objective become destructive of the legitimate rights and interests of creditors, the intended beneficiaries." *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 373 (5th Cir. 1987), *aff'd*, 484 U.S. 365 (1988).

In the Motion, again, the Debtors apparently believe that the only way the Debtors are a viable business is if Mr. Millenkamp is in control. The Debtors therefore advocate for those Millenkamp Insiders, but mostly Mr. Millenkamp, to protect the vendors, farmers, and employees that work with the Debtors, as discussed above.

It should be noted that the Debtors are presently in these chapter 11 cases for several reasons. One of those reasons is undoubtedly the operation of the Debtors by Mr. Millenkamp. To be clear, under the management and control of Mr. Millenkamp, the Debtors: (i) have been in maturity default on the repayment of approximately $100 million owed to the RLOC Agent since 2022, (ii) failed to repay the RLOC Agent even after being provided with a twelve (12) month forbearance period to obtain a refinancing, (iii) even after the termination of the forbearance in August 2023, had an additional five months to achieve a refinancing before the receivership, and (iv) after over one (1) year in chapter 11, have not been able to obtain a single binding refinancing commitment or put forward a confirmable plan. It is therefore a logical fallacy to state that the Debtors can only be successfully operated by Mr. Millenkamp. Instead, the public interest, and all the constituencies associated with these bankruptcy cases, are benefited by proceeding in these

cases with a viable chapter 11 plan that is confirmable, which plan has been proposed by the RLOC Agent. The parade of horribles asserted by the Debtors to meet this element of the analysis should be disregarded as pure speculation.

Finally, the public interest also supports the ability of individuals and businesses in Idaho to be able to seek financing from institutions, such as the RLOC Agent. Those lenders would likely think twice before lending to Idaho entities or individuals if their previously bargained for rights can be invalidated or even stalled as requested by the Debtors in the Motion without a clear showing that the automatic stay should be extended to non-debtors under the applicable law discussed above, which showing is clearly lacking in this case.

**C.    The Debtors' Cases Cited in the Motion are Distinguishable.**

The Debtors cite various authorities in the Motion to attempt to justify the relief requested in the Motion. None of the cases cited have similar, relevant facts to this case, and those authorities seem to be more general statements of the law of extending the automatic stay to non-debtors under § 105(a). Further absent from the Debtors' analysis is any case or other authority that would justify a non-debtor extension of the automatic stay, such as the Trusts and Mrs. Millenkamp, that are not involved in the reorganization process or the running of the business of the Debtors simply because one of the other principals of the Debtors would be "distracted" by those actions, as the Debtors argue in the Motion.

Principally, it appears that the Debtors are relying on *Bank of the West v. Fabtech Indus., Inc. (In re Fabtech Indus., Inc.)*, 2010 WL 6452908 (9th Cir. BAP July 10, 2010), and the cases cited therein, which BAP case is an unpublished, per curiam memorandum. In that case, the automatic stay was extended to a non-debtor principal multiple times. The BAP determined that

RABO AGRIFINANCE LLC'S OBJECTION AND RESPONSE TO THE
DEBTORS' MOTION FOR PRELIMINARY INJUNCTION - 29

the factual determination by the bankruptcy court was not clearly erroneous—a deferential standard of review—that this particular principal was a "key participant[]" in the bankruptcy case and in running the debtor's business. However, the BAP noted that the bankruptcy court found in that case that the principal was the reason for the debtor becoming "more profitable postpetition" and that the plan was capable of being confirmed, despite an argument by the creditor against confirmation. *Id.* at *5. In fact, the BAP noted that the bankruptcy court was "optimistic" that the debtor's plan would be confirmed. *Id.* at *6.

Similarly, the Debtors rely on *In re PTI Holding Corp.*, 346 B.R. 820 (Bankr. D. Nev. 2006). However, that court also determined that there was a reasonable likelihood of a successful reorganization because the debtor had taken appropriate steps early in the case and that it should be given "some time to develop a successful plan." *Id.* at 831.

The Debtors' further citation to *In re Continental Airlines*, 177 B.R. 475 (D. Del. 1993) is similarly unavailing. That case, an appeal to the district court from the bankruptcy court, dealt with the issue of whether a bankruptcy court may extend the automatic stay to non-debtors under § 105(a), which the bankruptcy court did below. *Id.* at 479. The district court held that the bankruptcy courts do have that authority. *Id.* However, there is no analysis in this case of the various elements of the now further understood § 105(a) analysis discussed above.

Next, the Debtors rely on *In re Lomas Fin. Corp.*, 117 B.R. 64 (S.D.N.Y. 1990). That case involved, similar to *In re Continental Airlines*, an appeal from a bankruptcy court, which extended the automatic stay to non-debtors below. The district court affirmed the bankruptcy court's extension in the case because the bankruptcy court applied the correct legal standard, and the factual findings were not clearly erroneous. There, the bankruptcy court found that the debtor

would have to be an active participant in the third-party litigation based on collateral estoppel, thus requiring the debtor itself to expend resources and time on the matter, which is not the case here. *Id.* at 66-67.

Next, the Debtors cite to *In re Kasual Kreation, Inc.*, 54 B.R. 915 (Bankr. S.D. Fla. 1985). Similar to *In re Fabtech Indus., Inc.*, that case involved a plan that was set for confirmation and the "success of that plan" was, at that time, "conjectural at best" because many issues were yet to be determined as to whether the plan was confirmable. *Id.* at 917. Similarly, in *In re Northlake Bldg. Partners*, 41 B.R. 231 (Bankr. N.D. Ill 1984), also relied on by the Debtors in the Motion, the bankruptcy court determined the plan filed by the debtor was "currently awaiting confirmation," and the court identified in the opinion no issues in proceeding to confirmation. *Id.* at 233.

Here, there is no cause for optimism when it comes to the Insider Plan, which has already been filed and is set for trial with the competing chapter 11 plan filed by the RLOC Agent. Moreover, there is no "conjecture" that the Insider Plan is fatally flawed for multiple reasons, a critical distinction from nearly all the cases relied upon by the Debtors. Further, the factual basis to extend the automatic stay to third parties is lacking here and there are no collateral estoppel issues to worry about with the Equities Sale. As such, the Debtors' case citations do not support the relief they seek in the Motion.

## V.  CONCLUSION

For all these reasons, the RLOC Agent respectfully requests that the Motion be denied.

Dated: May 12, 2025

HAWLEY TROXELL ENNIS & HAWLEY LLP

/s/ Brent R. Wilson

By _____
Brent R. Wilson, ISB No. 8936
Attorneys for Debtor Rabo AgriFinance LLC.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 12th day of May, 2025, I electronically filed the foregoing RABO AGRIFINANCE LLC'S OBJECTION AND RESPONSE TO THE DEBTORS' MOTION FOR PRELIMINARY INJUNCTION with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Matthew T. Christensen | Alexandra O. Caval |
| J. Justin May | CAVAL LAW OFFICE, P.C. |
| JOHNSON MAY | alex@cavallawoffice.com |
| mtc@johnsonmaylaw.com | *Attorney for Bill and Susie Millenkamp* |
| jjm@johnsonmaylaw.com | |
| *Attorneys for Debtors* | |

AND, I HEREBY CERTIFY that I have served the foregoing document to the following non-CM/ECF Registered Participants (list names and addresses):

/s/ Brent R. Wilson
Brent R. Wilson

RABO AGRIFINANCE LLC'S OBJECTION AND RESPONSE TO THE
DEBTORS' MOTION FOR PRELIMINARY INJUNCTION - 33